UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jawaun Fraser,

                Plaintiff,

     -against-

The City of New York, Undercover Officer
Number 84, Detective Matthew Regina, and
Detective Jason Deltoro, Individually and as
Members of the New York City Police
Department,

                Defendants.

20-cv-4926 (CM)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS'
RULE 12(C) MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

---

Matthew A. Wasserman
Haran Tae
Law Offices of Joel B. Rudin, P.C.
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
mwasserman@rudinlaw.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................1

BACKGROUND ........................................................................... 2

    A.    Factual history ...............................................................2

    B.    Procedural history ...........................................................5

ARGUMENT............................................................................... 6

POINT I ......................................................................................6

Jawaun Fraser has plausibly alleged a *Monell* claim against the City of New York for the customs or policies of the Manhattan District Attorney's Office. .....................................6

    A.    The prosecution violated *Brady* by disclosing only two of dozens of lawsuits filed against testifying police officers, giving the impression that there were no more. 6

    B.    DANY's unconstitutional custom or policy caused the *Brady* violation........... 15

POINT II....................................................................................17

Jawaun Fraser has plausibly alleged a *Brady* claim against the individual defendants....... 17

    A.    The individual police officer defendants violated *Brady* by failing to disclose impeachment evidence to the prosecution. ..............................................17

    B.    The individual defendants violated clearly established law. ...........................19

POINT III ..................................................................................22

Jawaun Fraser has plausibly alleged a *Monell* claim against the City for the NYPD's failure to train or supervise its police officers about their *Brady* obligations...............................22

CONCLUSION .........................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004)...........................................15, 22

*Arnold v. McNeil,* 622 F. Supp. 2d 1294 (M.D. Fla. 2009) ...........................................................13

*Arnold v. Sec'y, Dep't of Corr.*, 595 F.3d 1324 (11th Cir. 2010) .....................................................13

*Askins v. Doe No. 1*, 727 F.3d 248 (2d Cir. 2013) ...........................................................2, 15, 16, 17

*Banks v. Dretke*, 540 U.S. 668 (2004) ...........................................................................................8

*Bd. of Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397 (1997) ...............................15

*Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019) ...........................................................10, 15

*Bermudez v. City of New York*, 790 F.3d 368 (2d Cir. 2015) .............................................17, 21, 24

*Blake v. Race*, 487 F. Supp. 2d 187 (E.D.N.Y. 2007) ...................................................................21

*Brady v. Maryland*, 373 U.S. 83 (1963) ...........................................................................................1

*Carey v. Duckworth*, 738 F.2d 875 (7th Cir. 1984) ...........................................................................16

*Cash v. Cty. of Erie*, 654 F.3d 324 (2d Cir. 2011)...........................................................................22

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)......................................................................22

*Cone v. Bell*, 556 U.S. 449 (2009) ...............................................................................................14

*Fappiano v. City of New York*, 640 F. App'x 115 (2d Cir. 2016) ...................................................10

*Giglio v. United States*, 405 U.S. 150 (1972) .................................................................................11

*Hollman v. Wilson*, 158 F.3d 177 (3d Cir. 1998)...........................................................................16

*Jones v. Treubig*, 963 F.3d 214 (2d Cir. 2020) .................................................................19, 20, 21

*Kyles v. Whitley*, 514 U.S. 419 (1995) .................................................................................passim

*Layton v. Phillips*, 340 F. App'x 687 (2d Cir. 2009)..........................................................................9

*McGowan v. Christiansen*, 353 F. Supp. 3d 662 (E.D. Mich. 2018) ................................................. 13

*Milke v. Ryan,* 711 F.3d 998 (2013) ........................................................................... 10

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) ....................... 1

*Mullenix v. Luna*, 577 U.S. 7 (2015) ........................................................................... 21

*Newsome v. McCabe*, 260 F.3d 824 (7th Cir. 2001) ............................................................ 21

*Nnodimele v. Derienzo*, No. 13-CV-3461, 2016 WL 337751 (E.D.N.Y. Jan. 27, 2016).................... 14

*Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379 (4th Cir. 2014) ................................. 18, 20

*People v. Garrett*, 23 N.Y.3d 878 (2014) ........................................................... 7, 10, 12, 18

*People v. Smith*, 27 N.Y.3d 652 (2016) ......................................................................... 7

*Poventud v. City of New York,* No. 07-CV-3998, 2015 WL 1062186 (S.D.N.Y. Mar. 9, 2015)........20

*Shih Wei Su v. Filion*, 335 F.3d 119 (2d Cir. 2003) .................................................... 1, 8, 15

*Simon v. City of New York*, 893 F.3d 83 (2d Cir. 2018) ..................................................... 19

*Strickler v. Greene*, 527 U.S. 263 (1999) ...................................................................... 6

*Terebesi v. Torreso*, 764 F.3d 217 (2d Cir. 2014) ........................................................... 20

*Turner v. Schriver*, 327 F. Supp. 2d 174 (E.D.N.Y. 2004).............................................. 9, 13

*United States v. Agurs,* 427 U.S. 97 (1976) .................................................................. 12

*United States v. Auten*, 632 F.2d 478 (5th Cir. 1980) ....................................................... 16

*United States v. Brooks*, 966 F.2d 1500 (D.C. Cir. 1992) ................................................... 16

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) .......................................................... 6

*United States v. DeFabritus*, 605 F. Supp. 1538 (S.D.N.Y. 1985) ........................................... 10

*United States v. McClellon*, 260 F. Supp. 3d 880 (E.D. Mich. 2017) ....................................... 13

*United States v. Payne,* 63 F.3d 1200 (2d Cir. 1995) ............................................... 1, 7, 8, 10

*United States v. Thomas*, 981 F. Supp. 2d 229 (S.D.N.Y. 2013) ........................................ 11

*Valentin v. City of Rochester,* No. 11-CV-6238, 2018 WL 5281799 (W.D.N.Y. Oct. 24, 2018) .18, 19

*Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008)................................................. 17

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) ..........................................17, 21

*Wilson v. Layne*, 526 U.S. 603 (1999)......................................................................... 19

*Wray* v. *City of New York*, 490 F.3d 189 (2d Cir. 2007) ................................................22

*Young v. Cty. of Fulton*, 160 F.3d 899 (2d Cir. 1998) ...................................................24

*Youngblood v. West Virginia*, 547 U.S. 867 (2006)...................................................... 11

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000)............................................................ 17

## Rules

Fed. R. Civ. P. 4(c)(1) ............................................................................................. 11

## INTRODUCTION

The Defendants moved for partial judgment on the pleadings and to stay *Monell* discovery five months after they had answered the complaint and two months after their discovery responses were due. This Court has already denied the motion to stay because it appeared "to have been belatedly made in order to try to avoid producing long-promised *Monell* discovery." ECF No. 36. The motion for partial judgment on the pleadings has no more merit.

The Defendants' primary argument is that, contrary to the 440 court's finding, there was no *Brady* violation. They contend that the 38 lawsuits against the narcotics officers who arrested Jawaun Fraser were public records and thus could not be suppressed within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963). They spend pages discussing authority from other circuits for this point, yet never once acknowledge that the leading Second Circuit case on point establishes that the prosecution *can* violate its *Brady* obligations by failing to disclose otherwise publicly available records. In *United States v. Payne*, the Second Circuit held that the prosecution can suppress a public court document when, as in this case, the defense does not know the facts that would lead diligent counsel to uncover it. 63 F.3d 1200, 1209 (2d Cir. 1995). Here, the prosecutor disclosed only 2 of the 38 lawsuits, which reasonably led defense counsel to believe that was all there was—counsel is entitled to rely on prosecutors knowing their *Brady* obligations and the completeness of their disclosure. *See Shih Wei Su v. Filion*, 335 F.3d 119, 128 (2d Cir. 2003).

The Defendants' other arguments fare no better. They argue that the City cannot be held liable for this *Brady* violation under the principles set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), because the Defendants did not violate clearly established law. But a plaintiff need not show that the law was clearly established for a

*Monell* policy or custom claim; proof that a constitutional violation resulted from a municipal policy, custom, or practice suffices. *Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013).

Nevertheless, Fraser has plausibly alleged a violation of clearly established federal law. Defendants argue that it is not clearly established that police officers must disclose civil lawsuits against them to the prosecution, but this frames the clearly established law inquiry at far too granular a level of specificity for a *Brady* claim. Fraser's complaint alleges that the prosecution violated its clearly established duty to disclose material exculpatory and impeachment evidence to the defense, and that the police defendants violated their clearly established duty to disclose such *Brady* material to the prosecution. As we explain below, caselaw does not require a greater level of particularity to put law enforcement officials on notice of their constitutional obligations.

Taking the factual allegations of the complaint as true and drawing all reasonable inferences from them in favor of the plaintiff, as this Court must, Fraser has plausibly alleged a *Brady* violation. The Defendants' motion for partial judgment on the pleadings should be denied.

## BACKGROUND

### A.    Factual history

On the evening of October 21, 2014, Jawaun Fraser was walking to a store on the Lower East Side to buy some items for his mother when Undercover Officer 84 ("UC 84") approached him and asked to buy some drugs. Compl. ¶¶ 16, 19, 22, ECF No. 8. Fraser was 18 and had just started working as a union apprentice. *Id.* ¶ 17, 18. UC 84 was backed up by a team of five other New York City Police Department ("NYPD") officers conducting "buy and busts," including defendants Detective Jason Deltoro and Detective Matthew Regina. *Id.* ¶¶ 20, 30, 66, 67.

Fraser refused to sell UC 84 drugs, denying that he was a dealer, but UC 84 persisted. *Id.* ¶¶ 22–27. UC 84 handed Fraser his photo identification to try to show that he used to live in the

neighborhood and was not a cop. *Id.* ¶¶ 26–27. Fraser used his iPhone to take a photograph of UC 84's ID card. *Id.* ¶ 28. The team of narcotics officers then moved in to arrest Fraser. *Id.* ¶¶ 30–32. They searched Fraser but found that he did not have any drugs on him. *Id.* ¶ 33.

To justify Fraser's arrest, the narcotics team claimed that Fraser had robbed UC 84 of his ID and $20 in pre-marked buy money. *Id.* ¶ 34. UC 84, Deltoro, and Regina created police records documenting this false story. *Id.* ¶¶ 35–42. Regina and UC 84 also testified in the grand jury to this false story, and Fraser was indicted for robbery in the second degree. *Id.* ¶¶ 47–48.

Fraser's jury trial for robbery started on November 17, 2015. *Id.* ¶ 53. Before trial, the prosecutor, Assistant District Attorney Gregory Sangermano, provided Fraser's defense counsel with the names and index numbers of two federal civil rights lawsuits that had been filed against UC 84 and Regina. *Id.* ¶ 55. Knowing of only these two lawsuits, Fraser's trial attorney did not cross-examine the officers about these suits or their allegations of evidence fabrication. *Id.* ¶ 61.

The sole evidence of Fraser's supposed guilt presented at trial was the narcotics officers' false testimony. *See id.* ¶¶ 62–65. UC 84 falsely testified that Fraser had threatened him and forcibly taken his ID card and $20. *Id.* ¶ 62. Regina falsely testified that he had observed some of these events and that he had found UC 84's ID card on Fraser's person. *Id.* ¶ 63. Deltoro also provided false testimony corroborating UC 84's story, although he admitted the officers never found the $20 in pre-marked buy money that Fraser supposedly stole from UC 84. *Id.* ¶¶ 64–65.

Following a presentation of evidence that lasted one full day and two mornings, the jury deliberated for a full day. *Id.* ¶ 68. At one point, the jury told the judge it was "at a deadlock," leading the judge to read an *Allen* charge. *Id.* ¶ 69. The jury then returned a compromise verdict,

acquitting Fraser of the charged crime but convicting him of a lesser-included offense—robbery in the third degree. *Id.* ¶ 70. He was sentenced to two to six years' imprisonment. *Id.* ¶ 73.

After Fraser had already served his prison sentence, his appellate counsel filed a Criminal Procedure Law § 440.10 motion to vacate his conviction. *Id.* ¶ 79. Fraser's attorney argued that the prosecution violated *Brady* by failing to disclose a slew of impeachment evidence: namely, that the team of officers who arrested Fraser had been sued, not just two, but 35 times, for civil rights violations. *Id.* ¶ 80. ADA Sangermano admitted that he personally knew of 13 of these 35 suits but disputed that he had disclosed only two of them—as Fraser alleges. *Id.* ¶¶ 84–85; 440 Decision at 3–4, ECF No. 8-1. Fraser's appellate counsel also presented unrebutted evidence that other prosecutors in the New York County District Attorney's Office ("DANY") had known of at least some of the other 22 suits against the officers. Compl. ¶ 86.

Justice Robert M. Stoltz of the New York County Supreme Court granted Fraser's 440 motion and vacated his conviction for third-degree robbery. *Id.* ¶ 88. Without resolving the issue of whether ADA Sangermano had disclosed all 13 suits he knew about or only two of these suits, Justice Stoltz held that the prosecution violated *Brady* by failing to disclose the civil suits that were undisputedly known to other prosecutors in DANY. *Id.* ¶ 89; 440 Decision at 4–6. When DANY refused to outright dismiss the case, Fraser was forced to plead guilty to disorderly conduct, a non-criminal violation, in order to finally resolve his case. Compl. ¶¶ 92–93.

There were in fact *38* civil rights lawsuits filed against the six members of the narcotics team that arrested Fraser. *Id.* ¶ 111. Five of these suits were filed against Deltoro, eight against UC 84, and 14 against Regina (UC 84 and Regina were both defendants in one case). *See id.* ¶¶ 55, 116, 119, 123, 159. Most of the 38 lawsuits alleged that the officers had fabricated evidence

against criminal defendants or arrested them without probable cause. Because these 38 lawsuits are scattered among different paragraphs of the complaint, Plaintiff, for the Court's convenience, has attached an appendix listing the lawsuits by officer and summarizing their allegations.

## B.     Procedural history

On June 26, 2020, Jawaun Fraser filed suit under 42 U.S.C. § 1983. ECF No. 1.[1] His suit alleges evidence fabrication, malicious prosecution, and *Brady* violations. Compl. ¶¶ 95–170. The *Brady* violations are divided into three separate causes of action. Cause of action three states a *Brady* claim against the individual defendants—UC 84, Regina, and Deltoro—for withholding impeachment evidence from the prosecution. Cause of action four states a *Monell* claim against the City of New York for the NYPD's failure to train, supervise, or discipline police officers to comply with their *Brady* obligations. Cause of action five states a *Monell* claim against the City for DANY's policy or custom of not inquiring into lawsuits against testifying police officers and instead disclosing only the civil suits prosecutors already know about, thereby violating *Brady*.

The Defendants filed their answer on September 25, 2020. ECF No. 25. Over five months later, after waiting until much of the time allotted for discovery had already expired, the Defendants moved to dismiss Fraser's *Brady* claims and to stay *Monell* discovery. Notice of Motion, ECF No. 32; Defs.' Mem. of Law in Supp. of Defs.' Mot. for Partial Judgment on the Pleadings ("Defs.' MoL"), ECF No. 33. Plaintiff opposed the stay of discovery and the Court denied this branch of the motion. ECF Nos. 35, 36. The Defendants have not moved to dismiss the first two causes of action for malicious prosecution and evidence fabrication.

---

[1] Fraser's counsel realized the next day that he had inadvertently failed to attach the 440 court's decision as an exhibit to the complaint. He thus sought (and received) this Court's leave to replace docket entry one with the complaint in docket entry eight. ECF Nos. 10, 19.

# ARGUMENT

The Defendants' memorandum of law conflates two separate constitutional violations—the prosecution's failure to disclose impeachment material to the defense and the police officers' withholding of information about civil lawsuits against them from the prosecution—and several distinct theories of *Monell* liability. Accordingly, the following discussion departs from their organizational schema for the sake of clarity. Instead, Plaintiff will explain in turn why each of the three causes of action that the Defendants seek to dismiss states a plausible claim for relief.

## POINT I

**Jawaun Fraser has plausibly alleged a *Monell* claim against the City of New York for the customs or policies of the Manhattan District Attorney's Office.**

### A. The prosecution violated *Brady* by disclosing only two of dozens of lawsuits filed against testifying police officers, giving the impression that there were no more.

There are three elements to a *Brady* violation: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The facts alleged in the complaint (and the reasonable inferences therefrom) satisfy all three conditions, though the Defendants mostly dispute whether the lawsuits were suppressed. *See* Defs.' MoL at 6–11.

#### 1. *The civil lawsuits were favorable to Fraser.*

"Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001). The five suits filed against Deltoro, eight filed against UC 84, and 14 filed against Regina would have been useful to impeach their credibility. If there was any question about this, it would have dissipated the year before Fraser's trial when New

York's highest court held "the civil allegations against [a police officer in an unrelated suit] were favorable to defendant as impeachment evidence." *People v. Garrett*, 23 N.Y.3d 878, 886 (2014).

Indeed, the Defendants do not meaningfully contest that the civil lawsuits against the testifying officers were impeachment material. In a footnote they "question whether the fact that a police officer . . . was named in an unrelated federal civil rights lawsuit seeking money damages, absent a finding of wrongdoing, would constitute impeachment evidence *in the context of a federal civil rights action*." Defs.' MoL at 12 n.6 (emphasis added). But this misconstrues the present inquiry. Because Fraser was tried in state court, the question is whether unproven allegations from lawsuits could have been used to cross-examine and impeach the officers who testified against him there. Again, New York's highest court has answered the question: they can. "[L]aw enforcement witnesses should be treated in the same manner as any other witness for purposes of cross-examination." *People v. Smith*, 27 N.Y.3d 652, 661–62 (2016). Even when "a lawsuit has not resulted in an adverse finding against a police officer . . . , subject to the trial court's discretion, *defendants should be permitted to ask questions based on the specific allegations of the lawsuit if the allegations are relevant to the credibility of the witness*." *Id.* at 662 (emphasis added).

### 2a. The civil lawsuits were suppressed by the prosecution.

The Defendants reserve most of their fire for this element of *Brady*, claiming that the civil lawsuits against the police officers could not be suppressed because they were publicly available. Defs.' MoL at 6–11. This argument, however, runs afoul of this Circuit's binding precedent.

In *Payne*, the Second Circuit held that a public court record can be suppressed within the meaning of *Brady* when there is "no indication that [defense] counsel was aware of facts that would have required him to discover the [record] through his own diligent investigation." 63 F.3d at 1209. The court distinguished this from the situation where "the defendant or his

attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *Id.* at 1208 (cleaned up). *Payne* went on to hold that the prosecution had suppressed the *Brady* material in that case, an affidavit by a government witness, despite the "document's availability in a public court file." *Id.* at 1209. Rejecting the argument that the prosecution had no duty to produce the affidavit because it was a public court record, the Circuit instead held the prosecution suppressed this impeachment evidence by producing other materials relating to this government witness but not the affidavit. *Id.* "A defendant receiving such documents from the government could reasonably assume that the court files did not include other undisclosed exculpatory and impeachment documents pertaining to [the witness]." *Id.*

Here, *Payne* is controlling authority because neither Fraser nor his attorney knew or should have known of facts putting them on notice that they would find favorable evidence related to civil lawsuits against the police officers in public court records. *See* Compl. ¶¶ 55, 61. To the contrary, the prosecution's actions would have discouraged them from making any such investigation. The prosecutor disclosed only two lawsuits, and defense counsel was entitled to rely on this *Brady* disclosure as being accurate and complete. After all, "conscientious counsel *can* rely on prosecutors to live up to their obligations." *Shih Wei Su*, 335 F.3d at 128 (emphasis in original). When the prosecution tells the defense of two lawsuits against its witnesses, this is not an invitation to search for additional lawsuits, but rather a statement that there are just two. Busy preparing to defend his client at trial and no doubt having other cases, counsel need not "scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed." *Banks v. Dretke*, 540 U.S. 668, 695 (2004).

What happened here is analogous to a situation where the prosecution discloses only two convictions from a witness's voluminous rap sheet. The witness's criminal history is undeniably a public record; in fact, it is likely available to anyone willing to pay for a background check. But surely the prosecution's failure to disclose the other convictions would constitute suppression.

The district court's decision in *Turner v. Schriver*, 327 F. Supp. 2d 174 (E.D.N.Y. 2004), is instructive. When the defense in *Turner* requested "the conviction record of the State's witnesses," the prosecution failed to respond, thereby "signifying that [its key witness] had no record." *Id.* at 184. But the prosecutor had not "sought the requested impeachment evidence from any police officer or investigator, or ran a routine check for the presence of a criminal record. Indeed, the State did not run a rap sheet on [this witness] . . . until required to do so in this habeas corpus proceeding." *Id.* at 185. Judge Gershon, in granting habeas relief, held that, just like in the present case, the prosecution's nondisclosure of impeachment material misled the defense not to look any further. *Id.* Accordingly, she rejected any "argument that the defense was insufficiently diligent in pursuing the issue" of this witness's public criminal record. *Id.*

The Defendants here, after citing *Payne* but ignoring its holding favoring Plaintiff, cite a single unpublished circuit case and the underlying district court decision for the sweeping—and false—assertion that "[t]he overwhelming authority in this Circuit demonstrates that the failure to disclose publicly available information . . . does not violate *Brady*" because "its public nature means that it cannot be 'suppressed.'" Defs.' MoL at 6–7. But even the summary order they cite relies on binding precedent—*Payne*—that fatally undermines this claim. *See Layton v. Phillips*, 340 F. App'x 687, 689 (2d Cir. 2009). *Layton*, an unpublished case, cannot overturn *Payne*'s holding that public records *can* be suppressed. Instead, *Layton* is merely a case where, unlike this

one, the "defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *Payne*, 63 F.3d at 1208 (cleaned up).

The numerous cases the Defendants cite from other circuits offer them no more help. *See* Defs.' MoL at 8–10. Whatever the rule elsewhere, this Court "is bound by the law in this circuit." *United States v. DeFabritus*, 605 F. Supp. 1538, 1544 (S.D.N.Y. 1985). Moreover, the precedent from other circuits is less one-sided than the Defendants suggest. Not only has the en banc Third Circuit held that public records can be suppressed within the meaning of *Brady*, *see* Defs. MoL at 10 n.5, the Ninth Circuit's caselaw would likely support a finding of suppression on these facts. In *Milke v. Ryan*, like in *Payne*, the Ninth Circuit held that the prosecution suppressed public "court documents" because the defendant didn't "have enough information to find the *Brady* material with reasonable diligence." 711 F.3d 998, 1017–18 & n.6 (2013) (citing to *Payne*). [2]

### 2b. The prosecution knew of—or had a duty to learn of—the civil lawsuits.

The Defendants also argue in passing that there was no *Brady* suppression because "the prosecutor had no duty to inquire about the allegations [in unrelated civil lawsuits] or to search for the public lawsuit[s]." Defs.' MoL at 12 (quoting *Garrett*, 23 N.Y.3d at 891). But this argument, which relies on a state-court decision, runs contrary to Supreme Court precedent. The

---

[2] The Defendants also claim that "[t]o recover money damages for a *Brady* due process violation under § 1983, the violation must have been intentional." Defs.' MoL at 5. They derive this supposed requirement from loose language in an unpublished summary order dealing with a § 1983 *Brady* claim against an individual police officer. *See Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016). But the Second Circuit has never so held in any *published* decision. *See Bellamy v. City of New York*, 914 F.3d 727, 751 n.23 (2d Cir. 2019) (reserving the question). To the contrary, in the context of a *Monell* claim for *Brady* violations caused by an unlawful policy, the Circuit has upheld a civil *Brady* claim alleging that a prosecutor inadvertently failed to disclose impeachment information known to his office but not to him personally. *Id.* at 761–62. In any event, Fraser does allege that the *Brady* violation was intentional. *See* Compl. ¶¶ 130, 161.

trial prosecutor had a duty, which he violated, to learn about impeachment material known or possessed by others in his office and by the police officers who were part of the prosecution team.

The prosecution's *Brady* obligations extend beyond what is known to an individual ADA. "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Thus, "*Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.'" *Youngblood v. West Virginia*, 547 U.S. 867, 869–70 (2006) (quoting *Kyles*, 514 U.S. at 438). Moreover, a district attorney's office is a single entity for the purpose of its *Brady* obligations; an individual ADA can be charged with her colleagues' knowledge. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

UC 84, Regina, and Deltoro were each part of the prosecution team: they "witnessed" the purported robbery, documented their story in police records, and testified at trial. And they knew of the lawsuits against them. Compl. ¶¶ 114, 117, 120. Indeed, they had to be personally served in each case with a summons and complaint. *See* Fed. R. Civ. P. 4(c)(1). Accordingly, regardless of whether the trial prosecutor personally knew of the lawsuits against these officers, the prosecution had a duty to learn of—and disclose—this impeachment material. *See United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) (Pauley, J.) (holding that an officer who "assisted in the investigation" and testified at trial was "part of the prosecution team," and therefore his knowledge of *Brady* material was imputed to the prosecution).

The New York Court of Appeals' ruling to the contrary in *Garrett* relies on a "collateral misconduct" exception to *Brady* that is inconsistent with the United States Supreme Court's caselaw. *Garrett* held that "[w]hile prosecutors should not be discouraged from asking their

police witnesses about potential misconduct . . . they are not required to make this inquiry to fulfill their *Brady* obligations." 23 N.Y.3d at 890. Because the allegations contained in unrelated civil lawsuits are "collateral to defendant's prosecution," a police officer's "knowledge of his own alleged misconduct and the civil action against him could not be imputed to the [prosecution] for *Brady* purposes." *Id.* at 889. *But see id.* at 893–97 (Lippman, C.J., and two other judges concurring) (arguing that a police officer's knowledge of lawsuits against him should be imputed to the prosecution and the majority's exception for misconduct that is "'collateral' to defendant's case" is "arbitrary and illogical in the context of *Brady*'s suppression prong").

Neither the Second Circuit nor the Supreme Court has ever adopted such a collateral misconduct exception. Instead, the Supreme Court has twice dealt with *Brady* material unrelated to the prosecution at hand; both times, it assumed or decided that knowledge of this unrelated case material can be imputed to the prosecution. In *United States v. Agurs*, the undisclosed *Brady* material was that a murder victim had a prior criminal record. 427 U.S. 97, 100 (1976). The Court implicitly assumed that the prosecution had a duty to learn of this impeachment material, but held that the failure to disclose the material did not prejudice the defense. *See id.* at 109–14. If the prosecution had no duty to learn of this information, the Court's lengthy discussion of materiality and whether the prosecution need disclose *Brady* material without a request would all be dicta.

Then, in *Kyles*, the Court dealt with the nondisclosure of, among other things, evidence the State possessed linking a key prosecution witness to various other crimes. 514 U.S. at 429. The Court roundly rejected the State's argument "that it should not be held accountable . . . for evidence known only to police investigators and not to the prosecutor." *Id.* at 438. Instead, *Kyles* held that "the individual prosecutor has a duty to learn of *any* favorable evidence known to the

others acting on the government's behalf in the case, including the police." *Id.* at 437 (emphasis added). This broad language is incompatible with *Garrett*'s insistence that the prosecution need not be charged with knowledge of certain types of favorable evidence known only to the police.

Several district court decisions illustrate the point. In *Turner*, discussed above, the trial prosecutors had no personal knowledge of their key witness's criminal record, although this impeachment evidence "was readily available to the prosecution had it made the most modest effort." 327 F. Supp. 2d at 185. Yet the court did not hesitate to hold the prosecution responsible for the nondisclosure of this *Brady* material, which was presumably known to this witness, and hold that the prosecution had violated clearly-established Supreme Court law. *Id.* at 185–86. Similarly, in *Arnold v. McNeil*, the district court squarely held that knowledge of an investigating police officer's uncharged crimes could be imputed to the prosecution for purposes of *Brady*. 622 F. Supp. 2d 1294, 1312–15 (M.D. Fla. 2009). Rejecting the argument "that the favorable evidence was not suppressed by the prosecution because it was not within the prosecution's actual knowledge," *id.* at 1312, the court concluded that an investigating officer's knowledge of his own criminal conduct "is properly imputed to the prosecution," *id.* at 1315. The district court's reasoning was later adopted in full by a published decision of the Eleventh Circuit. *Arnold v. Sec'y, Dep't of Corr.*, 595 F.3d 1324 (11th Cir. 2010). Two judges of the Eastern District of Michigan subsequently came to the same conclusion, holding that the prosecution violated *Brady* by failing to disclose a police officer's unrelated criminal conduct despite the prosecutor being unaware of this misconduct. *See McGowan v. Christiansen*, 353 F. Supp. 3d 662, 668–73 (E.D. Mich. 2018); *United States v. McClellon*, 260 F. Supp. 3d 880, 883–88 (E.D. Mich. 2017).

### 3. The suppression of the civil lawsuits prejudiced Fraser.

A failure to disclose favorable evidence is "material" for purposes of *Brady* if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433 (citation and internal quotation marks omitted). In other words, a criminal defendant (or civil plaintiff) must show "a reasonable probability that the withheld evidence would have altered at least one juror's assessment" of the evidence. *Cone v. Bell*, 556 U.S. 449, 452 (2009). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial . . . ." *Kyles*, 514 U.S. at 434. In a § 1983 action, whether the suppressed evidence rises to this level of materiality is a question for the jury. *Nnodimele v. Derienzo*, No. 13-CV-3461, 2016 WL 337751, at *18–19 (E.D.N.Y. Jan. 27, 2016) (Ross, J.).

This was a close case, entirely reliant on police testimony. There was no other evidence of guilt. The jury spent a full day deliberating after a presentation of evidence that lasted only two days, sending the judge a note that it was deadlocked. Only after the judge read an *Allen* charge to the jury did the jury return a compromise verdict of guilty of robbery in the third degree.

If the civil lawsuits had been disclosed, defense counsel would have had the chance to cross-examine the officers about the allegations of the five civil suits against Deltoro, eight civil suits against UC 84, and 14 civil suits against Regina. In a case that rose and fell on officer credibility, questioning the officers about allegations that they had repeatedly fabricated evidence and arrested individuals without probable cause would have cast doubt on their veracity. Even if the officers denied every instance of alleged wrongdoing, a jury that heard of numerous specific allegations against an officer might be inclined to conclude that where there's smoke, there's fire.

Crediting the factual allegations of the complaint and drawing all reasonable inferences in the Plaintiff's favor, a reasonable civil jury could find there would have been a reasonable probability of an acquittal or a hung jury at Fraser's criminal trial if the civil lawsuits had been disclosed. *See, e.g.*, *Shih Wei Su*, 335 F.3d at 129 (holding that a habeas petitioner had showed prejudice where the prosecution withheld information that impeached the credibility of its chief witness—evidence that he had a sentencing deal—and "[t]he case was not overwhelming either way"). The reasonableness of this conclusion is demonstrated by the 440 court's decision, which the District Attorney's Office did not appeal, finding that the *Brady* violation was material.

**B.** **DANY's unconstitutional custom or policy caused the *Brady* violation.**

 "Liability under section 1983 is imposed on the municipality when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff." *Askins*, 727 F.3d at 253. Such liability does not lie only when a municipal policy is facially unconstitutional. "Where a city's official policy is constitutional, but the city causes its employees to apply it unconstitutionally, such that the unconstitutional application might itself be considered municipal policy, the city may be held liable for its employees' unconstitutional acts." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004) (Sotomayor, J.). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). A *Monell* claim can be brought against the City of New York for the actions (or inaction) of a District Attorney's Office such as DANY. *Bellamy v. City of New York*, 914 F.3d 727, 756–61 (2d Cir. 2019).

The factual allegations of the complaint make out such a claim. Fraser alleges that DANY had an unlawful policy or custom of prosecutors declining to inquire into civil lawsuits and then disclosing to the defense only those lawsuits they knew of, which was bound to be an incomplete disclosure. *See* Compl. ¶¶ 154–57. He further alleges that this policy or custom of deliberate ignorance, predictably, caused the *Brady* violation detailed above. *See id.* ¶¶ 157, 60–63.

While we will not reprise the discussion above, it bears noting that both the individual prosecutor and the office as a whole have an obligation "to seek information readily available to it." *Hollman v. Wilson*, 158 F.3d 177, 181 (3d Cir. 1998) (internal quotation marks omitted); *see also United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992); *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980). "[A] prosecutor's office cannot get around *Brady* by keeping itself in ignorance." *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984). DANY thus cannot escape its duty to learn of and disclose lawsuits against members of the prosecution team by burying its head in the sand. And it cannot defend its actions by arguing that the lawsuits are public records when it maintains a policy or custom of misleadingly disclosing the civil suits it does know about.

The Defendants' only argument for why the *Monell* claim fails, aside from their argument that there was no underlying constitutional violation, is that Fraser has not "plausibly allege[d] the existence of a clearly established federal constitutional right." Defs.' MoL at 15–16. Not so: Fraser alleges a violation of the clearly established right to disclosure of impeachment evidence, as we discuss below. But, in any event, there is no such requirement for *Monell* policy or custom claims. "[T]he entitlement of the individual municipal actors to qualified immunity because . . . there was no clear law or precedent warning them that their conduct would violate federal law is . . . irrelevant to the liability of the municipality." *Askins*, 727 F.3d at 254. "Municipalities are

held liable if they adopt customs or policies that violate federal law and result in tortious violation of a plaintiff's rights, regardless of whether it was clear at the time of the adoption of the policy or at the time of the tortious conduct that such conduct would violate the plaintiff's rights." *Id.*[3]

The Plaintiff's fifth cause of action therefore states a plausible claim for relief.

## POINT II

**Jawaun Fraser has plausibly alleged a *Brady* claim against the individual defendants.**

### A.    The individual police officer defendants violated *Brady* by failing to disclose impeachment evidence to the prosecution.

"Police officers can be held liable for *Brady* due process violations under § 1983 if they withhold exculpatory evidence from prosecutors." *Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015). To be sure, police officers have no duty to disclose *Brady* material directly to the defense. Instead, they "satisfy their obligations under *Brady*" by turning *Brady* material over to the prosecution. *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992).

That is precisely what Fraser alleges UC 84, Deltoro, and Regina failed to do. Fraser alleges that UC 84 did not tell the prosecutor about six lawsuits against him that he knew of and the prosecutor did not, Compl. ¶¶ 117–19; Deltoro did not tell the prosecutor about five civil suits that that he knew of and the prosecutor did not, *id.* ¶¶ 120–22; and Regina did not tell the prosecutor about two civil suits that he knew of and the prosecutor did not, *id.* ¶¶ 114–16. And, as discussed above, the failure to disclose these lawsuits violated *Brady*. Fraser thus alleges facts sufficient to plausibly state a claim that these officers violated his constitutional rights.

---

[3] Nor does it defeat Fraser's *Monell* claim that he cannot hold the individual ADA liable for the *Brady* violation. A prosecutor enjoys "absolute immunity" for "[a]ctions taken as an advocate." *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000). But while a *Monell* claim requires an underlying constitutional violation, it is no defense for the City that individual defendants are able to assert immunity from suit. *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008).

The Defendants rely on a state case, *People v. Garrett*, in arguing that police officers have no "constitutional obligation . . . to disclose to prosecutors their involvement in unrelated federal civil rights lawsuits." Defs.' MoL at 12–13. We have already explained *Garrett* is inconsistent with federal law. But even if that weren't the case, the Defendants' argument relies on a strained reading of *Garrett*. The Defendants reason that, if a *prosecutor* has no duty to seek out information about unrelated civil lawsuits against police officers under *Garrett*, then a police officer has no duty to disclose such information to the prosecutor. *See id.* While the *Garrett* majority absolved prosecutors of any duty to seek out lawsuits against officers, it also held that such civil suits are favorable within the meaning of *Brady*. *Garrett*, 23 N.Y.3d at 886, 889–90. This implies, as the 440 court held, that such lawsuits against officers must be disclosed if they are material and the prosecutor *does* know of them. *See* 440 Decision at 4–6, ECF No. 8-1. If a prosecutor has a duty to disclose such lawsuits to the defense if she knows of them, the police must have a concomitant duty to disclose such suits to the prosecutor if they know of them. "Whether or not an officer's knowledge is 'imputed' to the prosecutor does not affect the lawfulness of the officer's own conduct." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 400 (4th Cir. 2014).

The Defendants also rely on the district court's decision in *Valentin v. City of Rochester*, Defs.' MoL at 11–12, but *Valentin* is distinguishable. *Valentin* rejected a claim that police officers had violated *Brady* by failing to share the rap sheets of witnesses with the prosecution. No. 11-CV-6238, 2018 WL 5281799 at *14 (W.D.N.Y. Oct. 24, 2018). The rap sheets in question there were "not compiled or maintained by local police agencies," but instead by a statewide agency that also gave electronic access to prosecutors. *Id.* Because prosecutors "had complete access to the criminal histories of [witnesses]," the police had no duty to disclose this information. *Id.*

That is a very different set of facts from this case, where Fraser alleges that officers knowingly or intentionally withheld information about lawsuits from a prosecutor who was not personally aware of these civil suits. Compl. ¶¶ 114–23, 130. Unlike in *Valentin*, the police officers here were in "sole possession" of the undisclosed impeachment material. 2018 WL 5281799 at *13.

Fraser has thus plausibly alleged that the individual defendants violated his constitutional rights. This leaves only the question of whether these officers are entitled to qualified immunity.

### B. The individual defendants violated clearly established law.

Despite repeatedly arguing that the officers did not violate "clearly established" law, the Defendants assert that they are not raising a qualified-immunity defense. Defs. MoL at 13 & n.7. Plaintiff invites this Court to take them at their word, and pass over the issue. But if the Court does consider the question, Fraser can show a violation of clearly established constitutional law.

"[W]hen an official raises qualified immunity as a defense, the court must consider whether: "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (cleaned up). "In determining whether a right is clearly established," courts in this Circuit "can consider Supreme Court decisions and [Second Circuit] decisions, as well as 'a consensus of cases of persuasive authority.'" *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

In defining "the constitutional right at issue" to determine whether it is clearly established, courts must "strik[e] a balance between defining the right specifically enough that officers can fairly be said to be on notice that their conduct was forbidden, but with a sufficient measure of abstraction to avoid a regime under which rights are deemed clearly established only if the precise fact pattern has already been condemned." *Simon v. City of New York*, 893 F.3d 83, 96–97 (2d Cir. 2018) (cleaned up). In *Jones*, for instance, the Circuit held that it was clearly

established that "it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others." 963 F.3d at 225. The *Jones* court thus rejected the argument that the plaintiff's clearly established constitutional rights were not violated because the officer used a taser rather than the pepper spray used in a previous case: "[a]n officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury." *Id.* (bracket in original) (quoting *Terebesi v. Torreso*, 764 F.3d 217, 237 (2d Cir. 2014)).

Judge Batts' decision in *Poventud v. City of New York* demonstrates how this inquiry applies to allegations that police officers violated their *Brady* obligations. After noting that the plaintiff alleged an officer had violated *Brady* by failing to disclose the results of an identification procedure, she held that "it was clearly established under Supreme Court and Second Circuit case law that the Government has a duty to disclose in a timely fashion exculpatory and impeachment evidence and that police officers satisfy this duty by turning over exculpatory evidence to prosecutors." No. 07-CV-3998, 2015 WL 1062186, at *8 (S.D.N.Y. Mar. 9, 2015). Accordingly, she rejected the defendants' "attempt to avoid a finding that the law was clearly established by defining Plaintiff's constitutional right to [have the officer] prepare a DD5 or otherwise document the photo identification procedure" as "too narrow" a definition. *Id.* at *9.

Other courts have defined the clearly established constitutional right in similarly general terms as the right to have police officers disclose exculpatory and impeachment evidence to the prosecution. *See, e.g., Owens*, 767 F.3d at 400–01 (holding that police officers violated clearly

established law by withholding *Brady* material); *Newsome v. McCabe*, 260 F.3d 824, 825 (7th Cir. 2001) (same); *Blake v. Race*, 487 F. Supp. 2d 187, 216 n.21 (E.D.N.Y. 2007) (Bianco, J.) (same).[4]

The Defendants' attempt to define the right at issue as the right "for officers to inform prosecutors of the existence of [civil] lawsuits," Defs.' MoL at 13, is simply "too narrow." A long series of Supreme Court and Second Circuit cases clearly establish that the government has the duty to disclose all material impeachment or exculpatory information to the defense, even if known only to the police. *See, e.g.*, *Kyles*, 514 U.S. at 432–38. It is equally clearly established in this Circuit that police officers have a duty to disclose *Brady* material to the prosecution. *See, e.g.*, *Bermudez*, 790 F.3d at 376 n.4; *Walker*, 974 F.2d at 299. Defining the constitutional right based on the specific type of information withheld rather than the obligation to disclose exculpatory and impeachment evidence would defeat § 1983's broad remedial purpose. It cannot be that there must be binding precedent involving an officer failing to disclose the exact type of impeachment evidence at issue before the law is clearly established. Even in the Fourth Amendment context, where the Supreme Court has cautioned that "specificity is especially important," *Mullenix v. Luna*, 577 U.S. 7, 12 (2015), such a high degree of particularity is not needed. *See Jones*, 963 F.3d at 225–27 (holding that it did not matter that the officer used a taser rather than pepper spray).

The Plaintiff's third cause of action therefore states a plausible claim for relief.

---

[4] Whether evidence rises to the level of *Brady* materiality is, of course, a question for the prosecution. The police have a duty to "share[] all exculpatory evidence with the prosecutors." *Blake*, 487 F. Supp. 2d at 216 n.21. Prosecutors are "charged with the task of determining which evidence constitutes *Brady* material that must be disclosed." *Walker*, 974 F.2d at 299.

## POINT III

**Jawaun Fraser has plausibly alleged a *Monell* claim against the City for the NYPD's failure to train or supervise its police officers about their *Brady* obligations.**

Fraser has also sufficiently made out a *Monell* claim based on the actions of the NYPD.

One way to establish *Monell* liability is to show that a policymaking official was on notice of, but was deliberately indifferent to, constitutional violations caused by subordinates. "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (quoting *Amnesty Am.*, 361 F.3d at 126 (2d Cir. 2004)); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 395 (1989). "[D]eliberate indifference may be inferred where 'the need for more or better supervision to protect against constitutional violations was obvious,' . . . but the policymaker 'fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs.'" *Cash*, 654 F.3d at 334 (citations omitted). Accordingly, a municipality can be said to have acted with deliberate indifference where "[i] a policymaker knows to a moral certainty that city employees will confront a particular situation; [ii] the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and [iii] the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Wray* v. *City of New York*, 490 F.3d 189, 195–96 (2d Cir. 2007).

Fraser's *Monell* claim against the NYPD alleges that policymaking officials at the NYPD were deliberately indifferent to the need to train, supervise, and discipline police officers in their constitutional obligation to disclose *Brady* material, and that this deliberate indifference caused

the *Brady* violations by the defendant-officers in this case—namely, their failure to disclose the civil lawsuits filed against them. Compl. ¶¶ 132-147. The factual allegations of the complaint, taken as true, make out such a claim. Fraser alleges that, in spite of knowing that officers regularly testify as essential prosecution witnesses and are often subject to civil lawsuits which accuse them of dishonesty and other misconduct, policymaking officials at the NYPD had failed to adopt any policy, practice, or procedure requiring police witnesses to disclose such lawsuits to the prosecution at the time of Fraser's trial in November 2015. *Id.* ¶¶ 135-36. Fraser also alleges that even though the issue of whether to disclose various forms of material favorable to the defense arises regularly, the NYPD failed to train or supervise officers concerning their *Brady* obligations *at all*; NYPD policymakers issued no relevant Patrol Guide provision or other directives, and previous depositions of NYPD personnel at all levels have revealed a complete lack of knowledge or training as to *Brady* and its disclosure requirements. *Id.* ¶¶ 137, 138 & n.2. Further, Fraser alleges, the NYPD failed to discipline officers for failing to disclose *Brady* material, including civil lawsuit information or other impeachment evidence. *Id.* ¶ 139.

Policymakers at the NYPD knew "to a moral certainty" that officers confront the issue of whether to disclose *Brady* material generally, and civil lawsuits impeaching their credibility specifically. *See id.* ¶ 135, 138. They knew the issue of "whether to disclose impeachment and other evidence favorable to a criminal defendant, including civil lawsuits against police witnesses, presents the kind of difficult or non-obvious choice that instruction, training, supervision, and discipline would make less difficult." *Id.* ¶ 141. And they knew that the failure of police officers to disclose such impeachment evidence would frequently cause the deprivation of the constitutional rights of criminal defendants like Fraser. *Id.* ¶ 142. The NYPD's failure to institute any training,

supervision, or discipline concerning the constitutional obligations of police officers to disclose *Brady* material to the prosecution, including civil lawsuits brought against them, was therefore deliberately indifferent, and caused the *Brady* violations in this case. *Id.* ¶ 140.

As for the Defendants' argument that Fraser's *Monell* claim fails because he has failed to allege a violation of clearly established law, Defs.' MoL at 15–16, we have dealt with that above. *See* Point IIB, supra. At the time of Fraser's criminal trial, it was clearly established that (a) the government must disclose all material impeachment or exculpatory information to the defense, even if known only to the police; and (b) police officers, in turn, have a duty to disclose *Brady* material to the prosecution. *See, e.g.*, *Kyles*, 514 U.S. at 432–38; *Bermudez*, 790 F.3d at 376 n.4.[5]

The Plaintiff's fourth cause of action therefore states a plausible claim for relief.

## CONCLUSION

The Defendants' Rule 12(c) motion for partial judgment on the pleadings should be denied in its entirety. In the alternative, to the extent that this Court finds the pleading deficient, Plaintiff asks for the opportunity to amend his complaint to correct any deficiencies.

---

[5] Moreover, it is far from clear that any such requirement to show clearly established law applies to Fraser's *Monell* claims for the NYPD's failure to supervise and/or discipline officers. Defendants are correct that "a claim for *failure to train* cannot be sustained unless the employees violated a clearly established federal constitutional right." *Young v. Cty. of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998) (emphasis added). But we are not aware of any binding Second Circuit precedent holding that a showing of clearly established law is required for a failure to discipline or supervise *Monell* claim. There is reason to think that it may not be: failure to train and failure to supervise theories of liability "emphasize different facts and require different showings in order to establish deliberate indifference." *Amnesty Am.*, 361 F.3d at 127 & n.8. The question is academic, however, because Plaintiff has alleged a violation of clearly established federal law.

Respectfully submitted,

_/s/ Matthew A. Wasserman_
Matthew A. Wasserman
Haran Tae
Law Offices of Joel B. Rudin, P.C.
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
mwasserman@rudinlaw.com

*Attorneys for Plaintiff*

DATED:      New York, New York
            March 15, 2021