UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

Jawaun Fraser,

                                     Plaintiff,

                        -against-

The City of New York, Undercover Officer Number 84, Detective Matthew Regina, and Detective Jason Deltoro, Individually and as Members of the New York City Police Department,

                                     Defendants.

20 CV 4926 (CM)

------------------------------------------------------------------------ x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS

**JAMES E. JOHNSON**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007
By:    Brian Francolla
          *Senior Counsel*
          Special Federal Litigation Division
          (212) 356-3527

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ......................................................................................**iii**

       **POINT I**        **THE FAILURE TO DISCLOSE PUBLICLY AVAILABLE CIVIL LAWSUITS DOES NOT VIOLATE BRADY** ........................... **1**

       **POINT II**      **POINT II: PLAINTIFF'S DEFENSE ATTORNEY HAD NO BASIS TO RELY ON THE CIVIL LAWSUITS PROVIDED BY THE PEOPLE AS EXHAUSTIVE.** .................................... **5**

       **POINT III**     **GARRETT WAS CORRECTLY DECIDED AND COMPORTS WITH SECOND CIRCUIT AND SUPREME COURT LAW** ............................................................................. **8**

       **POINT IV**     **POLICE OFFICERS HAVE NO FEDERAL CONSTITUTIONAL OBLIGATION TO DISCLOSE UNRELATED LAWSUITS TO THE PROSECUTION** .................... **9**

       **POINT V**      **PLAINTIFF'S MONELL CLAIMS FAIL.** .......................................... **10**

**CONCLUSION** ...................................................................................................... **11**

# TABLE OF AUTHORITIES

**Page(s)**

335-7 LLC v. City of N.Y.,
    2021 U.S. Dist. LEXIS 43046 (S.D.N.Y. Mar. 8, 2021) ........................................................ 2

Arnold v. McNeil,
    622 F. Supp. 2d 1294 (M.D. Fla. 2009) .................................................................................... 8

Banks v. Dretke,
    540 U.S. 668 (2004) ............................................................................................................... 6-7

Kyles v. Whitley,
    514 U.S. 419 (1995) ............................................................................................................... 1,9

Layton v. Phillips,
    340 F. Appx. 687 (2d Cir. 2009) ...................................................................................... passim

Layton v. Phillips,
    2008 U.S. Dist. LEXIS 10759 (E.D.N.Y. Feb. 13, 2008) ........................................................ 3

McIntosh v. Conway,
    2016 U.S. Dist. LEXIS 145359 (S.D.N.Y. Oct. 19, 2016) ...................................................... 7

Morgan v. Salamack,
    735 F.2d 354 (2d Cir. 1984) ................................................................................................... 8,9

People v. Garrett,
    23 N.Y.3d 878 ...................................................................................................................... passim

People v. Teran,
    172 A.D.3d 447 (1st Dept. 2019) ............................................................................................. 6

Reiter v. United States,
    371 F. Supp. 2d 417, 434 (S.D.N.Y. 2005) ............................................................................. 4

Shih Wei Su v. Filion,
    335 F.3d 119 (2d Cir. 2003) ................................................................................................... 6,7

Turner v. Schriver,
    327 F. Supp. 2d 174 (E.D.N.Y. 2004) ..................................................................................... 7

United States v. Agurs,
    427 U.S. 97 (1976) ................................................................................................................. 1,9

United States v. Paulino,
    445 F.3d 211 (2d Cir. 2006) ..................................................................................................... 7

# TABLE OF AUTHORITIES
**(cont.)**

**Page(s)**

United States v. Payne,
    63 F.3d 1200 (2d Cir. 1995) ............................................................................ passim

United States v. Payne,
    591 F.3d 46 (2d Cir. 2010).......................................................................................... 2

United States v. Rosner,
    516 F.2d 269 (2d Cir. 1975) ...................................................................................... 8

United States v. Tejeda,
    824 F. Supp. 2d 473 (S.D.N.Y. 2010) ..................................................................... 2

Valentin v. City of Rochester,
    2018 U.S. Dist. LEXIS 182601 (W.D.N.Y. Oct. 24, 2018) .................................... 10

Washington v. Brown,
    2009 U.S. Dist. LEXIS 48122 (E.D.N.Y. June 8, 2009) ......................................... 4

Yu v. United States,
    1998 U.S. Dist. LEXIS 4506 (S.D.N.Y. Apr. 6, 1998)............................................ 4

,

Plaintiff's opposition misses the mark. Defendants did not argue that public records can never be suppressed. Nor did defendants argue that law enforcement does not have an obligation to learn of or disclose impeachment material that relates to a case. Instead – as defendants argued – the problem for plaintiff is that his claims are based upon civil complaints that were publicly available and did not arise out of the events of his case. As the New York Court of Appeals and the Second Circuit both have held, in <u>Garrett</u> and <u>Layton</u>, respectively, there is no disclosure obligation with respect to such information.

It is a sure sign of an uphill battle when the viability of one's claim depends on a repudiation of appellate caselaw. As plaintiff acknowledges, either the Court of Appeals is right or he is right, but they both cannot be. Defendants respectfully submit that this Court should side with the Court of Appeals (and the numerous federal appellate courts to reach the same result). <u>Garrett</u> is directly on point and was correctly decided. The decisions on which plaintiff places his primary reliance – <u>Payne</u>, <u>Agurs</u>, and <u>Kyles</u> – confirm as much, in that they do not remotely suggest the existence of a clearly established federal constitutional obligation to disclose the type of information at issue here. In fact, other decisions that plaintiff brings to this Court's attention, when read in full, directly undermine his reliance on these cases. For the reasons outlined herein and in defendants' opening brief, our motion should be granted.

**POINT I: THE FAILURE TO DISCLOSE PUBLICLY AVAILABLE CIVIL LAWSUITS DOES NOT VIOLATE <u>BRADY</u>**

Plaintiff portrays defendants' position as arguing that the failure to disclose publicly available information can never violate <u>Brady</u>. He achieves this portrayal by a selective quotation from defendants' brief that excises the essential context of our argument. According to plaintiff, defendants' position is that "[t]he overwhelming authority in this Circuit demonstrates that the failure to disclose publicly available information . . . does not violate *Brady*" because "its

1

public nature means that in cannot be 'suppressed.'"  Pl.'s Opp., p. 9.  The full quote is "[t]he overwhelming authority in this Circuit demonstrates that the failure to disclose publicly available information *akin to that at issue herein – the existence of civil rights lawsuits* – does not violate <u>Brady</u> for the intuitive reason that its public nature means that it cannot be 'suppressed.'"  Defs.' Mem., p. 7. (emphasis added).  The purpose of an ellipsis is not to omit the central point of quoted material.  In his effort to pit defendants' argument against the Second Circuit's holding in <u>United States v. Payne</u>, 63 F.3d 1200 (2d Cir. 1995) – which plaintiff similarly oversimplifies, <u>see</u> p. 3, <u>infra</u> – plaintiff completely mischaracterizes our position.

       <u>Layton</u> is both directly on point and consistent with <u>Payne</u>.  Plaintiff's claim is that publicly available civil lawsuits were suppressed in violation of his federal constitutional rights under <u>Brady</u>.  Pl.'s Opp., pp. 7-10.  That is the only type of publicly available information that plaintiff claims should have been produced and was not.[1]  <u>Id.</u>  In <u>Layton</u>, the Second Circuit specifically found that "[t]he prosecutor did not violate <u>Brady</u> by *failing to disclose the existence of the civil lawsuit*."  <u>Layton v. Phillips</u>, 340 F. App'x 687, 689 (2d Cir. 2009) (emphasis added).  Rather than grapple with the reasoning in <u>Layton</u>, plaintiff instead chooses to essentially ignore it on the basis that it was a summary order.  Although summary orders do not constitute binding precedent, they do offer "valuable appellate guidance" and courts are not "free to rule differently in similar cases."  <u>335-7 LLC v. City of N.Y.</u>, 2021 U.S. Dist. LEXIS 43046, at *21 n.7 (S.D.N.Y. Mar. 8, 2021) (quoting <u>U.S. v. Payne</u>, 591 F.3d 46, 58 (2d Cir. 2010)); <u>U.S. v. Tejeda</u>, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010)).  Yet that is exactly what plaintiff is asking this Court to do – ignore valuable appellate guidance and rule differently in a similar case.

---

[1] Plaintiff devotes substantial space in his brief to the issue of whether the evidence was favorable to him and whether it was material to the outcome of his trial.  Defendants have moved only on the "suppression" element of a <u>Brady</u> claim. There is no reason for the Court to address the other two elements at this time.

Plaintiff's contends that <u>Layton</u> conflicts with <u>Payne</u>, yet the former explicitly relies on the latter.  <u>Layton</u>, 340 F. App'x at 689.  The Circuit's respective holdings are entirely consistent.  <u>Payne</u> stands for the proposition that, under certain circumstances the failure to disclose publicly available information *may* result in a finding of suppression under <u>Brady</u>.  <u>Payne</u>, 63 F.3d at 1208-09.  <u>Layton</u> makes clear that the failure to disclose civil lawsuits does not fit the bill.  <u>Layton</u>, 340 F. App'x at 689.  A comparison of the underlying facts in each case makes this clear.  In <u>Payne</u>, the publicly available information at issue was a sworn affidavit from a cooperating witness wherein she denied participating in events she would later admit to being involved in while testifying against the defendant.  <u>Payne</u>, 63 F.3d at 1208-09.  The prosecutor in <u>Payne</u> was aware of the affidavit and its contents related to the events underlying the charges.  <u>Id.</u> (noting that the affidavit "outright contradicted the testimony [that the witness] was certain to give at the trial of Payne.").  Under the circumstances, the Second Circuit found suppression notwithstanding the fact that the affidavit existed in a public court file.  <u>Id.</u> at 1208 ("*Given the circumstances here*, we reject the government's argument.") (emphasis added).  In <u>Layton</u>, the publicly available information was relevant solely for collateral impeachment purposes and did not relate to the events of the charged offense.  <u>Layton</u>, 340 F. App'x at 688.  It was also far easier to find since it required only a general search and not the scouring of a particular court file.

Plaintiff cursorily seeks to distinguish <u>Layton</u> by arguing that it "is merely a case where, unlike this one, the 'defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence.'"  Pl.'s Opp., pp. 9-10.  But that is exactly what happened here.  In <u>Layton</u>, the defense attorney should have known about the civil lawsuit against the witness because it was filed prior to the testimony of the witness and

counsel could have discovered it through a search.  Layton v. Phillips, 2008 U.S. Dist. LEXIS 10759, *16 (E.D.N.Y. Feb. 13, 2008).  That rationale is even more appropriate in this case.  As noted in defendants' moving papers, unlike in Layton, discovery of the lawsuits at issue in this case did not even require a trip to the County Clerk's Office.  Plaintiff's defense attorney could have discovered the lawsuits from the comfort of his office in as little time as it would have taken him to type the police officers' names into PACER.

        In addition to Layton, defendants included in their moving papers four district court cases from this Circuit that all post-date Payne and found that similar types of publicly available information was not suppressed under Brady.  See Defs.' Mem., pp. 8-9.  That was not an exhaustive list.  See Washington v. Brown, 2009 U.S. Dist. LEXIS 48122, *12 (E.D.N.Y. June 8, 2009) (finding no suppression, and thus no Brady violation, based on non-disclosure of the criminal records of the decedent because such records are publicly available); id. at *12 (finding that defense counsel could have obtained the records via his own investigation given that "appellate counsel turned up a great deal of information regarding [the decedent]'s criminal history using 'the CRIMS System'"); Reiter v. United States, 371 F. Supp. 2d 417, 434 (S.D.N.Y. 2005) (finding no suppression, and thus no Brady violation, where the allegedly undisclosed facts were revealed at a hearing and thus "were part of the public record"); Yu v. United States, 1998 U.S. Dist. LEXIS 4506, *18-19 (S.D.N.Y. Apr. 6, 1998) (finding no suppression, and thus no Brady violation, where the undisclosed exculpatory information was contained in the "publicly available trial transcript" of a co-conspirator); id. at *19 ("[T]he government did not violate Brady by failing to draw defense counsel's attention to possibly exculpatory information which was in the public record").  While Payne makes clear that there are unique circumstances where publicly available information can be deemed suppressed under

4

Brady, subsequent case law in this Circuit makes clear that is more the exception than the rule.

**POINT II: PLAINTIFF'S DEFENSE ATTORNEY HAD NO BASIS TO RELY ON THE CIVIL LAWSUITS PROVIDED BY THE PEOPLE AS EXHAUSTIVE**

Plaintiff argues that his defense attorney had no reason to know he "would find favorable evidence related to civil lawsuits against the police officers in public court records." Pl's. Opp., pp. 8-9.  Plaintiff further contends that because the prosecution allegedly disclosed only two lawsuits, his defense counsel "was entitled to rely on this *Brady* disclosure as being accurate and complete" and representative of a prosecutor living up to his obligations.  Id.  This argument fails because there is no obligation under Brady, as a matter of state or federal law, for the prosecution to provide the defense with all unrelated civil rights lawsuits that may have been filed against any police witnesses who might testify.  People v. Garrett, 23 N.Y.3d at 890-1 (the People have no affirmative duty to inquire about the allegations contained in a public lawsuit or to search the dockets of every case in every federal and state court in New York for complaints against their police witnesses).  Rather than except this reality, plaintiff is reduced to simply claiming that the New York Court of Appeals was wrong.[2]

Plaintiff's defense attorney had no basis to presume that the civil suits provided by the People constituted an exhaustive list.  As noted supra, the law was clear that the prosecution did not have an obligation to ask police officer witnesses about the existence of civil lawsuits nor perform their own search.  Absent such an obligation, the possibility would always exist that a cautionary provision of such lawsuits would not constitute an exhaustive list.  Focusing on plaintiff's prosecution, there is no allegation that the prosecutor made any representation to the defense that the list of lawsuits he provided was exhaustive.  In the hearsay affirmation of

_____

[2] See Pl's. Opp., pp. 6-7, for the portion of Garrett that plaintiff chooses to accept as good law since he considers it to be favorable to his claim.

plaintiff's post-conviction counsel, counsel represented that plaintiff's trial counsel told her that he "mistakenly believed that these were the only two lawsuits against the officers" and "assumed that, if the prosecutor was making a <u>Garrett</u> disclosure, then he would have provided all of the lawsuits against the officers."   <u>See</u> May 1, 2019 Affirmation from Jacqueline Meese-Martinez, annexed to the March 22, 2021 Declaration of Brian Francolla as Ex. "A," p. 26, ¶ 78.   There was no basis in law or fact for that assumption: <u>Garrett</u> plainly did not require such a disclosure. That plaintiff's trial counsel proceeded under that mistaken assumption, despite the clear language of <u>Garrett</u>, rather than spending an hour on PACER, does not open the door for plaintiff to now argue that the lawsuits were "suppressed."   <u>Cf.</u> <u>People v. Teran</u>, 172 A.D.3d 447, 449 (1st Dept. 2019) (finding a <u>Brady</u> claim "unavailing" where the defendant alleged that the People had disclosed some, but not all, information about an unrelated civil suit against a police officer witnesses; reasoning that the undisclosed information "was both a matter of public record and readily available to defendant by making an electronic search").

The cases plaintiff cites to support his "reliance" argument involve circumstances that are not remotely applicable to the facts of this case.   In <u>Banks v. Dretke</u>, 540 U.S. 668 (2004), and <u>Shih Wei Su v. Filion</u>, 335 F.3d 119 (2d Cir. 2003), the prosecution lied to defense counsel and suborned perjury.   The defense in both cases did not fail to investigate the respective issues because doing so would have been based on a presumption that the prosecution was lying. <u>Banks</u>, 540 U.S. at 696 (the state affirmatively represented that it had disclosed all <u>Brady</u> material, hid witness' status as a police informant, failed to correct the witness' false testimony at trial, and continued to falsely deny the witness' status as a police informant in post-conviction litigation); <u>Shih Wei Su</u>, 335 F.3d at 128 ("It follows that when a prosecutor says that there was no deal and later elicits testimony from a witness denying the existence of a deal, it would be an

unreasonable application of federal law, as determined by the Supreme Court, to fault the defendant for not proceeding in his cross-examination on the assumption that the prosecutor is a liar.").   Nothing remotely of the sort is even alleged to have occurred during plaintiff's prosecution.   And, neither case involved the type of publicly available material at issue here.   On the contrary, both involved material that was solely in the hands of the prosecution: a "sealed" cooperation agreement (Shih Wei Su, at 128) and evidence of witness coaching in the form of a transcript of a witness' interrogation by police and evidence of payments to the witness (Banks, at 675, 677-78, 685).[3]

Plaintiff also cites Turner v. Schriver, 327 F. Supp. 2d 174 (E.D.N.Y. 2004).   In Turner, the defense specifically requested the conviction record of the prosecution's witnesses. Id. at 184.   The State did not respond to that request and, notably, it was undisputed that by not responding to that request, the prosecution had conveyed no records existed.   Id.   At trial, the prosecution then called a witness, who did indeed have a criminal record, and elicited from him that he did not.   Id. at 177-178.   In summarizing the constitutional issue, the Court found that "[a]s the duty under Brady is defined retrospectively, under these facts, the prosecutor's representation that Mr. Clarke had no record, both to defense counsel and to the jury, when in fact he did, leads to the conclusion there was a violation of due process which resulted in a verdict unworthy of confidence."   Id. at 185.   Here, the prosecution never made any such representation to the defense or the jury, nor did the police officer witnesses falsely deny at trial the existence of any civil lawsuits filed against them.   Moreover, the prosecution in Turner had

---

[3] Cf. McIntosh v. Conway, 2016 U.S. Dist. LEXIS 145359, *38 (S.D.N.Y. Oct. 19, 2016) (distinguishing Banks on its facts and noting that, "post-Banks, the Second Circuit has reiterated the frequently recognized rule that [e]vidence is not considered to have been suppressed within the meaning of the Brady doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence") (citing United States v. Paulino, 445 F.3d 211 (2d Cir. 2006)).

an obligation to search for and disclose any criminal record for their witness while no such obligation existed for the prosecutor in this case with respect to civil lawsuits.  As noted supra, Garrett expressly confirms that no such obligation exists.

**POINT III:  GARRETT WAS CORRECTLY DECIDED AND COMPORTS WITH SECOND CIRCUIT AND SUPREME COURT LAW**

Plaintiff incorrectly asserts that the Second Circuit has never recognized the difference between impeachment information that relates to the events of the case and impeachment information external to the events of the case.  In so doing, plaintiff ignores relevant Second Circuit authority, including authority explicitly referenced in a case plaintiff relies on.  In Arnold v. McNeil, 622 F. Supp. 2d 1294 (M.D. Fla. 2009), the Court analyzed United States v. Rosner, 516 F.2d 269 (2d Cir. 1975), and classified it as a case where the Second Circuit "determined that evidence of an officer's criminal activity, known exclusively to the officer himself, need not be imputed to the prosecutor even though such evidence might be favorable to the defendant."  Arnold, 622 F. Supp. 2d at 1313.  Plaintiff notably relies on Arnold even though the Florida district judge, in that decision, declined to adopt the Second Circuit's contrary rationale in Rosner.  Id. at 1321-1322.

Perhaps more relevant than Rosner, yet also ignored by plaintiff, is Morgan v. Salamack, 735 F.2d 354 (2d Cir. 1984).  In Morgan, the Second Circuit found the following:

> "[a] prosecutor is not constitutionally obligated to obtain information *dehors* his files for the purpose of discovering information which defense counsel can use in impeaching the credibility of a prosecution witness. His omission to do so does not place him at the risk of being charged with unfairness of the trial; such failure to make a check does not amount to denial of due process in the constitutional sense.  Particularly is this true where, as here, the evidence is equally available to the defense, which chose not to investigate before the trial the public sources thereof."

Id. at 358.  That reasoning is quite similar, if not identical, to the reasoning in Garrett.  The

Second Circuit in <u>Morgan</u> reached this conclusion after harmonizing its finding with the Supreme Court's decision in <u>United States v. Agurs</u>, 427 U.S. 97 (1976) – another case that plaintiff contorts in an attempt to support his misguided theory of a <u>Brady</u> violation.  <u>Id.</u>  While the undisclosed <u>Brady</u> material in <u>Agurs</u> was the victim's prior criminal record, <u>Agurs</u>, 427 U.S. at 100-01, which in some states is a matter of public record, plaintiff omits out the relevant context.  Since the victim was dead, and thus not testifying, the issue was not a matter of impeachment.  Rather, the defendant was claiming self-defense and the prior criminal record of the victim involved convictions for assault and carrying the same deadly weapon relevant to the that defense.  <u>Id.</u>  The victim's record thus related to the events of the offense.  Like with <u>Agurs</u>, plaintiff twists the events of <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995), in an effort to support his claim.   Plaintiff cites <u>Kyles</u> as a case where the nondisclosure of evidence linking a key prosecution witness to various other crimes violated <u>Brady</u>.  Pl's. Opp., pp. 12-13.  Absent again is the context of that finding – namely, that the witness at issue was alleged to have committed the charged murder, set up the defendant, and those "other crimes" were committed at the same location as the murder.  <u>Kyles</u>, 514 U.S. at 445-49.  Because this witness similarly did not testify, the non-disclosed information was not impeachment material, but rather, it went to the strength of the police investigation in the case.  <u>Id.</u>  As in <u>Agurs</u>, the information thus related to the events of the offense.   In sum, <u>Garrett</u> is consistent with both Supreme Court and Second Circuit precedent that there is no duty for a prosecutor to learn of and disclose collateral allegations of misconduct in the form of publicly available lawsuits.   Plaintiff's request that this Court effectively overturn <u>Garrett</u> should be denied.

**POINT IV: POLICE OFFICERS HAVE NO FEDERAL CONSTITUTIONAL OBLIGATION TO DISCLOSE UNRELATED LAWSUITS TO THE PROSECUTION**

If the failure of the prosecution to disclose publicly available lawsuits to the

defense does not violate federal law, then certainly police officers cannot be liable for failing to disclose such information to the prosecution.  Notably, plaintiff cannot cite to one case – literally from anywhere even after he managed to find authority from the Middle District of Florida – to support his claim that any failure of the defendants to disclose publicly available lawsuits to the prosecution violates federal law.  Even more telling, plaintiff seeks to distinguish <u>Valentin v. City of Rochester</u>, 2018 U.S. Dist. LEXIS 182601 (W.D.N.Y. Oct. 24, 2018), on the grounds that here, unlike <u>Valentin</u>, the defendants "were in 'sole possession' of the undisclosed impeachment material."  That assertion is nonsensical.  The specific information at issue in this case is the existence of federal civil rights lawsuits.  <u>See</u> Pl's. Opp., pp. 17-21.  While defendants are presumably aware of their status as defendants in those cases, to argue that they alone are in possession of that information is absurd.  Like the rap sheets in <u>Valentin</u>, prosecutors, along with anyone who has internet access, have complete access to this information via PACER.

**POINT V: PLAINTIFF'S <u>MONELL</u> CLAIMS FAIL**

In order for plaintiff's <u>Monell</u> claims to be viable, it must be supported by an underlying constitutional violation.  That is not the case here.  Plaintiff's theory of <u>Monell</u> liability is divorced from the limited violation found by the trial court that decided his CPL 440 motion, namely, that the prosecutor had failed to disclose lawsuits that were known to another prosecutor within the District Attorney's Office.  Even the court that granted plaintiff's 440 motion rejected the notion that the prosecutor had an obligation to search outside the files of his office or otherwise ask the officers to provide the information.  As argued at length in defendants' moving papers and herein, there is no constitutional requirement under federal or state law for prosecutors to search for and disclose unrelated and publicly available civil lawsuits to the defense nor for police officers to disclose that information to the prosecution.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that the Court grant their

motion, together with such costs, fees and other further relief as the Court deems just and proper.

Dated:  New York, New York   **JAMES E. JOHNSON**
   March 22, 2021    CORPORATION COUNSEL OF THE CITY OF NEW YORK
               *Attorney for Defendants*
               100 Church Street
               New York, New York 10007
               (212) 356-3527

                /s/
          By: _____
               Brian Francolla
               *Senior Counsel*
               Special Federal Litigation Division

cc:  Matthew Wasserman, Esq. (by ECF)
   Law Offices of Joel B. Rudin
   152 West 57th Street, 8th Floor
   New York, New York 10019

   Haran Tae, Esq. (by ECF)
   Law Offices of Joel B. Rudin
   152 West 57th Street, 8th Floor
   New York, New York 10019

   Joel Barry Rudin, Esq. (by ECF)
   Law Offices of Joel B. Rudin
   200 West 57th Street, Suite 900
   New York, New York 10019