# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 72
-----------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK, :

    -against- :

JAWAWN FRASER, : **DECISION AND ORDER**

: Ind. No. 4844/14
    **Defendant.**
-----------------------------------------------------------------x

ROBERT M STOLZ, J.:

    Following a jury trial, the defendant was convicted of Robbery in the Third Degree in violation of PL §160.05. He was sentenced on January 13, 2016, to a term of imprisonment of two to six years. In a motion filed on May 2, 2019, defendant has moved to vacate the judgment of conviction pursuant to CPL §440.10(1)(h), claiming that the People failed to disclose *Brady* material prior to trial. The People oppose the motion. For the following reasons, the motion is granted.

## Factual Background

    At trial, Undercover Officer 84 ("UC/84") testified that on October 21, 2014, he attempted to purchase crack-cocaine from an unidentified woman in the courtyard of a public housing building. When the woman left to procure the drugs, defendant approached the undercover; asked whether he was a police officer; and demanded his identification. In response, the officer handed over a fake driver's license and, inadvertently, a twenty dollar bill of pre-recorded buy money. The defendant pocketed the items. When UC/84 asked defendant to return them, defendant threatened to "fuck him up" as a small crowd gathered, encouraging defendant to hit the officer. UC/84 made a distress signal to the field team. As the field team moved in, the defendant ran but was soon apprehended. Detective Regina, who was the

assigned arresting officer and had watched the transaction unfold alongside the assigned "ghost" officer, joined in the chase and Regina recovered, from the defendant, two cellular telephones, the fake license and over $100.00, in United States currency, which did not include the buy money.

## Procedural History

Following the defendant's indictment, his then attorney, James McQueeny, Esq., filed an omnibus motion, making only a general request for *Brady* material. He did not specifically request material about whether any of the subject police officers were, or had been, the subject of civil lawsuits or disciplinary proceedings.

At the trial, UC/84 and Detective Regina were the principal witnesses for the prosecution. Detective Regina testified concerning his observations and his seizure of property he recovered from defendant. The defense focused on the inconsistencies between UC/84 and Regina's trial testimony and hearing testimony, and argued that their versions of the events was implausible.

On June 18, 2018, defendant perfected his appeal arguing that the suppression hearing should not have been re-opened to allow UC /84 to testify and that the conviction was against the weight of the evidence. Oral argument was heard by the Appellate Division on December 5, 2018. The Court has yet to issue its decision.

## The Civil Lawsuits

Shortly before the appellate argument, defense counsel learned that on October 2, 2018, Justice Laura Ward of this Court had granted a CPL §440.10 motion in the case of *People v. Gary Harris*, Ind. No. 4781/13 ("The Harris trial"), a case which also involved UC/84 and

2

Detective Regina. That trial had concluded in March of 2016, shortly after the trial of defendant herein. Two years later, on September 12, 2018, the People had advised Justice Ward that before the Harris' trial, and therefore before the trial of this defendant, they had known of approximately twelve lawsuits against Detective Regina, one of which also named UC/84 as a defendant. Those lawsuits alleged false arrest, malicious prosecution, excessive force, and illegal strip searches. In response to Mr. Harris' CPL §440.10 motion, the People argued that these lawsuits would have been of little or no impeachment value because they were neither favorable or material. Justice Ward, however, rejected that argument, holding that the determination of materiality rests with the Court, not the People, and that the People had erred in withholding the information on that basis.

The defendant has now filed a motion, arguing that after his trial he discovered at least 35 civil lawsuits alleging misconduct by UC/84, Regina, and other members of the field team. After discovering these lawsuits, defendant's current counsel contacted defendant's trial counsel, Geoffrey Stewart, Esq.,[1] and learned that prior to defendant's trial the People had disclosed only two such lawsuits. Mr. Stewart advised that he did not use the two cases of which he had been apprised to impeach the officers because he believed they would simply deny the allegations, and it would appear that he was "quibbl[ing] with them." Mr. Stewart further advised that, had he known of all of these lawsuits he would have endeavored to impeach the officers with them because their sheer number would have "persuaded the jury that the officers were not being truthful." The People respond that they conducted a pre-trial "*Garrett* search" and discovered

---

[1] At the defendant's request Mr. McQueeny had been relieved and Mr. Stewart was assigned through trial

3

thirteen lawsuits against officers in this case which they believe were disclosed to Mr. Stewart pre-trial. These lawsuits did not include the 12 suits that were not disclosed in Harris' case or this case.

## Discussion

To establish a *Brady* violation, defendant must show: (1) the evidence is favorable to the defendant because it is exculpatory or impeaching in nature; (2) it was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material. *People v. Garrett*, 23 NY3d 878, 885 (2014); *People v. Fuentes*, 12 NY3d 259, 263 (2009); *People v. LaValle*, 3 NY3d 88, 109-110 (2004). Where a defendant makes a request for specific information under *Brady/Giglio*, materiality is established if there is a "reasonable possibility" that the outcome of the proceedings would have been different had defendant timely possessed the information. When no specific request is made, materiality turns on whether there is a "reasonable probability" that had the material been provided, the outcome would have been different. *People v. Garrett, supra* at 888; *People v. Fuentes, supra* at 263; *People v. Vilardi*, 76 NY2d 67, 73 (1990). Here, the "reasonable probability" standard controls since it is undisputed that only a general request was made.

The first prong to establish a *Brady* violation has been satisfied. I have reviewed the undisclosed files which were in the People's possession prior to the *Harris* trial as well as those discovered and submitted by defense counsel, and find that they constitute impeachment evidence favorable to the defense. *See People v. Garrett, supra; People v. Smith*, 27 NY3d 652, 669 (2016), *supra, reargument denied sub nom People v. McGhee*, 28 NY3d 1112 (2016), *supra* (defendant properly questioned officer about allegations in a federal lawsuit alleging false arrest

4

because participation in a false arrest was relevant to assessment of officer's credibility). Although the People argue that the defendant would have been precluded from inquiring about these lawsuits because they were not "material" that determination rests with the trial judge, not the prosecutor. *See Harris, supra*. Impeachment based on information in civil lawsuits, like any other bad acts, is generally permissible. *See People v. Smith*, 27 NY3d 652, 662; *People v. Holmes*, 170 AD3d 532, 533-534 (1st Dept 2019); *People v. Ducret*, 95 AD3d 636 (1st Dept 2012), *lv. denied* 19 NY3d 996 (2012).

The second prong requires defendant to show that the information was suppressed by the People. Here it is clear that while the prosecutor was personally unaware of the lawsuits discovered after the *Harris* trial, to wit: the 12 civil suits against Detective Regina, he nonetheless had constructive or "institutional knowledge" of them before trial and they should have been disclosed. *See Garrett, supra* at 887; *People v. Wright*, 86 NY 2d 591, 598 (1995), *citing Giglio v. United States*, 405 US 150, 154 (1972) (the mandate of *Brady* extends beyond any particular prosecutor's actual knowledge). Accordingly, the second prong is established with respect to those 12 civil suits only.[2]

The third and final prong hinges upon a determination of whether prejudice arose because the suppressed evidence was material. As stated earlier, I must find that there was a

---

[2] With respect to the 13 suits the People believe they disclosed and the additional lawsuits defendant discovered, defendant has not demonstrated that the People suppressed them. After all, the prosecutor's duty to learn of impeachment material known to those "acting on the government's behalf" extends only to information directly related to the prosecution or investigation of the *defendant's* case." (emphasis added). *People v. Garrett, supra* at 888. Here, defendant has not alleged that any of these law suits directly relate to him. Thus, it cannot be said that the People suppressed them. However, the same cannot be said of the aforementioned twelve lawsuits.

5

"reasonable probability" that the suppressed evidence would have changed the outcome of the trial. Because the case hinged on the credibility of the witnesses, I find that the suppressed lawsuits were material and that defendant was prejudiced by his inability to cross-examine the officers about instances of misconduct. I further find that there was a reasonable probability that the suppressed impeachment evidence would have resulted in a different verdict. *See, People v. Harris, supra; People v. Wigfall*, Ind. No 443/10 (Sup Ct, NY County 2015, Hon. Charles Solomon) The defendant has therefore satisfied the third prong of a *Brady* violation.

The motion to vacate the conviction is granted and a new trial ordered.

This constitutes the decision and order of the Court.

Dated: December 6, 2019

DEC 0 6 2019

J.S.C.

**HON. ROBERT STOLZ**

DEC 2 4 2019

I hereby certify that the foregoing
paper is a true copy of the original
thereof, filed in my office.

County Clerk & Clerk of the
Supreme Court New York County
OFFICIAL USE

6