UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

Jawaun Fraser,

                                            Plaintiff,      20 CV 4926 (CM)

        -against-

The City of New York, Undercover Officer Number 84, Detective Matthew Regina, and Detective Jason Deltoro, Individually and as Members of the New York City Police Department,

                                            Defendants.

------------------------------------------------------------------------ x


# MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT


                 **GEORGIA M. PESTANA**
                 CORPORATION COUNSEL OF THE CITY OF NEW YORK
                 *Attorney for Defendants*
                 100 Church Street
                 New York, New York 10007
                 By:    Brian Francolla
                          *Senior Counsel*
                          Special Federal Litigation Division
                          (212) 356-3527

**TABLE OF CONTENTS**

    **Page**

**TABLE OF AUTHORITIES** ................................................................................................... iii

**ARGUMENT** ............................................................................................................................... 1

    POINT I     THERE IS NO EVIDENCE IN THE RECORD TO ESTABLISH THAT THE DEFENDANTS FAILED TO DISCLOSE THE EXISTENCE OF CIVIL LAWSUITS THEY WERE AWARE OF .......... 8

    POINT II    PLAINTIFF'S BRADY CLAIM FAILS BECAUSE HIS CRIMINAL DEFENSE ATTORNEYS SHOULD HAVE KNOWN ABOUT THE CIVIL LAWSUITS THAT WERE NOT DISCLOSED ................................................................................. 4

    POINT III   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFF'S BRADY CLAIMS ................................................. 5

    POINT IV   THE CITY OF NEW YORK WAS NOT DELIBERATELY INDIFFERENT ........................................................................................ 6

    POINT V    AT A MINIMUM THE COURT SHOULD BIFURCATE THE MONELL CLAIM FOR PURPOSES OF TRIAL .................................... 9

    POINT VI   PLAINTIFF FAILS TO ADEQUATELY ALLEGE THE PERSONAL INVOLVEMENT OF DEFENDANT DELTORO ............ 9

**CONCLUSION** ........................................................................................................................ 10

## **TABLE OF AUTHORITIES**

**Page(s)**

Fraser v. City of N.Y., No. 20-CV-04926 (CM)
   2021 U.S. Dist. LEXIS 69324 (S.D.N.Y. Apr. 9, 2021)............................................................3

People v. Garrett,
   2014 NY Slip Op 4876, 23 N.Y.3d 878 ......................................................................................4

Thorpe v. City of N.Y., No. 19-CV-5995 (CM) (RWL),
   2021 U.S. Dist. LEXIS 161832 (S.D.N.Y. Aug. 25, 2021)) .........................................................6

Walker v. City of New York,
   974 F.2d 293 (2d Cir. 1992) .......................................................................................................3

Wray v. City of New York,
   490 F.3d 189 (2d Cir. 2007) .......................................................................................................6

# ARGUMENT

## POINT I

### THERE IS NO EVIDENCE IN THE RECORD TO ESTABLISH THAT THE DEFENDANTS FAILED TO DISCLOSE THE EXISTENCE OF CIVIL LAWSUITS THEY WERE AWARE OF

Plaintiff's opposition fails to point to any admissible evidence that would establish the defendants deliberately withheld information about their lawsuit histories from ADA SanGermano. Looking at the testimony of the individual defendants and ADA SanGermano collectively, they all had a practice of discussing individual officer lawsuit information in advance of any criminal trial they were involved in. See Defendants' Statement of Undisputed Fact Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1 Stmt."), ¶¶ 26-45. While none of them remember their specific conversations on the topic pertaining to plaintiff's criminal trial, there is nothing in the record to presume that any of them – let alone all of them – deviated from their standard practices.

Plaintiff attempts to rely on selected statements from UC 84 and Detective Deltoro in an effort to undermine their testimony about their respective practices. Id. at ¶¶ 39 and 43. However, these statements alone, when construed within the broader discussion of the topic during their respective depositions, are insufficient to create an issue of fact. For UC 84, plaintiff cites to largely irrelevant testimony where he says he does not remember when prosecutors starting asking him about his civil lawsuit history. Id. at ¶ 43. Plaintiff tellingly ignores the far more relevant testimony from the same exhibit where UC 84 makes clear he has always throughout his entire career with the NYPD disclosed to the prosecutor civil lawsuits he was aware of, the fact that he had been sued, and his approximation of how many times. Id. For Detective Deltoro, plaintiff jumps on his belief that lawsuits filed against him do not negatively

1

impact his credibility.  Id. at ¶ 39.  As an initial matter, a review of corresponding docket sheets for those lawsuits arguably supports Detective Deltoro's belief.  Moreover, Detective Deltoro was simply sharing his opinion in the midst of a back and forth where he repeatedly made clear that notwithstanding that opinion, he knew of the obligation to disclose his lawsuit information to the prosecution and would do so assuming he knew of and/or remembered the specifics at the time of the relevant conversation.  Id.

Plaintiff next points to the incomplete results of ADA SanGermano's search for civil lawsuit histories as evidence that UC 84 and Detective Deltoro could not have mentioned anything about the topic to him.  See Pl's Opp., p. 8.  This argument is without basis.  ADA SanGermano's testimony is clear that while he does not have an independent recollection of initiating a search for the lawsuit histories of the testifying officers during plaintiff's prosecution, "that is certainly what I would expect I would have done." Defs.' 56.1 Stmt., ¶ 26 (specifically 119: 23 – 120: 12).  He further testified that there was no reason he could think of that he would have omitted the name of any testifying officer.  Id.  His practice at the time, and DANY's generally – which plaintiff now concedes was in fact constitutional – was to perform their own search of civil lawsuit histories for any testifying officer.  Id. at ¶¶ 26-35. In fact, ADA SanGermano's specific practice was to have the search performed before he even met with a particular officer so that he could discuss anything relevant he found.  Id. Thus, DANY's incomplete search results cannot be used to establish that the officers did not mention anything about the topic since the search was happening regardless.  Id.  Moreover, according to everyone involved in this process the individual officers were often the least accurate source for this information.  Id.  Thus, even if the defendants were unable to provide specific information about their lawsuit histories, that would not have precluded ADA SanGermano from conducting his

own search as was required under DANY's constitutional policy.  Id.  Accordingly, plaintiff's strained inferences drawn from the evidentiary record are insufficient to create an issue of material fact as to whether UC 84 and Detective Deltoro each failed to disclose to ADA SanGermano the existence of civil lawsuits they were aware of naming them as a party.

There is an additional basis to dismiss the Brady claim against Detective Deltoro, particularly in light of plaintiff's failure in his opposition to sufficiently allege Detective Deltoro's requisite involvement in any alleged constitutional violation.  This Court has already stated that "for purposes of § 1983, 'police satisfy their obligations under Brady when they turn exculpatory evidence over to the prosecutors,' Walker v. City of New York, 974 F.2d 293, 299 (2d Cir. 1992), and evidence that bears on the credibility of testifying officers — *if they are key witnesses* — constitutes potentially exculpatory evidence under Giglio."  Fraser v. City of N.Y., No. 20-CV-04926 (CM), 2021 U.S. Dist. LEXIS 69324, at *19 (S.D.N.Y. Apr. 9, 2021) (emphasis added).  Detective Deltoro was not a key witness in plaintiff's criminal trial.

As defendants noted in their original moving papers, what Detective Deltoro personally witnessed mirrors plaintiff's description of the incident.  This is true in this litigation, but also was the case during plaintiff's criminal trial.  He never testified in either proceeding that he heard what was said between plaintiff and UC 84 or that he personally observed the search of plaintiff – the two aspects of the underlying incident where there exists material issues of disputed fact.  Plaintiff's only argument to the contrary of the latter point is that according to Detective Regina, Detective Deltoro was standing "nearby" when plaintiff was searched (Plaintiff's Statement of Additional Material Facts ("Pl's 56.1 Stmt."), ¶ 91), but that does not create any issue of fact as to what Detective Deltoro actually saw when his own testimony is unequivocal on that point.  Id. at ¶ 93.  Focusing specifically on plaintiff's criminal trial, his

3

defense counsel's opening statement conceded as true the aspects of the incident that Detective Deltoro personally observed.  See November 18, 2014 Transcript from Plaintiff's Criminal Trial, annexed to the Declaration of Brian Francolla, dated October 4, 2021 ("Francolla's Decl."), as Exhibit "D," pp. 22-28; Detective Deltoro's testimony from the Criminal Trial, generally, annexed to Francolla's Decl. as Exhibit "E," pp. 163-193.  Accordingly, even if this Court were to find that there is an issue of fact as to whether Detective Deltoro failed to disclose his lawsuit history to ADA SanGermano, plaintiff's Brady claim should still fail since he was not a key witness in the prosecution and thereby any failure to disclose this information would not be material.

## POINT II

### PLAINTIFF'S BRADY CLAIM FAILS BECAUSE HIS CRIMINAL DEFENSE ATTORNEYS SHOULD HAVE KNOWN ABOUT THE CIVIL LAWSUITS THAT WERE NOT DISCLOSED

Defendants largely rest on their original moving papers and only briefly address plaintiff's opposition to this point.  Plaintiff refers to defendants' argument about what his defense attorney should have known as stating that "the implicit premise is that he should not have trusted in the completeness of the prosecution's *Brady* disclosure." Pl's Opp., p. 9.  This is not a question of trust.  There is nothing in the record to suggest that ADA SanGermano certified his Garrett disclosure as complete.  Moreover, under New York state law, ADA SanGermano had no obligation to provide to the defense what would constitute a "complete" Garrett disclosure.  See People v. Garrett, 23 N.Y.3d 878, 890 (2014) (holding that the State has "no affirmative duty to search the dockets of every case in every federal and state court in New York for complaints against their police witnesses.").  He was only required to disclose those lawsuits that he (and his office generally) had knowledge of without any requirement under state law that

4

he conduct an exhaustive search.  Id.  Defendants are not advocating that plaintiff's criminal defense attorney had a duty to distrust the prosecution's disclosures.  Defendants are merely acknowledging the reality that under Garrett a disclosure could be legally sufficient, yet still incomplete.  Plaintiff's criminal defense attorney also acknowledged this reality, generally speaking, since his practice was to double check the People's Garrett disclosures around the time of plaintiff's criminal trial – he just did not follow that practice with respect to the individual defendants.  Defs.' 56.1 Stmt., ¶¶ 47-52.  Although that may have stemmed from his positive working relationship with ADA SanGermano, even specific to this case he acknowledged that he accepted the disclosure as being complete "as they understood their obligations."  Id. (specifically p. 24: 2-13).  Accordingly, there is evidence in the record to establish that plaintiff's criminal defense attorney should have been aware of the civil lawsuits filed against the individual defendants and this provides an additional basis to dismiss the remaining Brady related claims against the defendants.

## POINT III

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFF'S BRADY CLAIMS

Despite the attention plaintiff pays to this point in his opposition, it does not appear that there is any legal dispute.  See Pl's Opp., pp. 10-14.  Both sides seem to agree that police officers must only disclose to the prosecution lawsuits they know of and that there is no constitutional obligation for police officers to be fully versed on their lawsuit histories.  Id.  The disagreement instead appears to be in how each side views the evidentiary record.  In this regard, plaintiff argues that "[t]he evidence must still be taken 'in the light most favorable to the opposing party' when determining whether the Defendants violated clearly-established law."  Id. at p. 14.  Defendants again do not disagree with this legal premise.  The problem, however, for

5

...

plaintiff is that there is no evidence in the record to contradict the defendants' testimony about their states of mind and their general practices. Each testified in sum and substance that they would have disclosed all they knew to ADA SanGermano, but that they likely did not know the entirety of their lawsuit histories or certainly the identifying information for each case. Defs.' 56.1 Stmt., ¶¶ 36-45. Plaintiff's argument to the contrary that the defendants did not follow their general practices is thus entirely speculative.

## POINT IV

### THE CITY OF NEW YORK WAS NOT DELIBERATELY INDIFFERENT

When Monell liability is predicated on deliberate indifference, the plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Thorpe v. City of N.Y., No. 19-CV-5995 (CM) (RWL), 2021 U.S. Dist. LEXIS 161832, at *35 (S.D.N.Y. Aug. 25, 2021) (quoting Wray v. City of New York, 490 F.3d 189, 196 (2d Cir. 2007)). Plaintiff has failed to satisfy this burden.

Pursuant to Rule 30(b)(6), defendants produced a party representative, Director Katie Flaherty, to address the training the NYPD provided to its members of service about their obligations to disclose impeachment information about themselves to the prosecution as well as affirmatively disclose their civil lawsuit histories. Defs.' 56.1 Stmt., ¶¶ 53-54. According to Director Flaherty, the NYPD has been training members of service about their obligation to disclose impeachment information about themselves to the prosecution since before 2005, and to affirmatively disclose their civil lawsuit histories to the prosecution beginning in 2014. Id. The basis for her knowledge is that she was present for and actually provided this training. Id. This training was provided in-service (i.e. after graduation from the police academy) and it was

structured to filter through all ranks of the NYPD either directly or via instruction from a supervisor who already received the training.  Id.  In-service training is designed to supplement the more basic surface level instruction provided to recruits in the academy.  Id. at ¶¶ 53-54 and 56-57.

In his opposition, plaintiff does not point to any specific deficiency in the NYPD's training program.  See Pl's Opp., pp. 14-18.  Instead, plaintiff simply says there was no training program at all to address these issues prior to plaintiff's criminal trial.  Id.  Plaintiff's basis for this assertion is his claim that "the Defendants failed to produce any training materials or documentary evidence" that would corroborate Director Flaherty's testimony.  Id. at p. 15.  As an initial matter, defendants did not fail to produce anything.  Director Flaherty made clear in her testimony that there was no written material associated with this specific aspect of the training prior to January of 2017.  Id. at ¶¶ 53-54.  Director Flaherty similarly made clear, however, that the topics were absolutely covered in the trainings that she participated in which began before 2015.  Id.  While there was nothing in writing to corroborate that fact, she has first person knowledge.  Id.  Plaintiff has absolutely no basis to argue that her testimony is untrue nor can he point to admissible evidence that would create an issue of fact precluding summary judgment on this point.  Notably, plaintiff can point to no legal authority for the proposition that written material is a necessary requirement in order for training to be deemed sufficient.  That alone is fatal to his failure to train claim.

The only evidence plaintiff refers to in his opposition is the fact that prior to 2019, the written materials provided to NYPD recruits did not fully define Brady material to include the element of potential evidence that might impeach the individual police officer's credibility.  See Pl's Opp., pp. 16-18.  In other words, the definition provided to recruits, while accurate, was

7

legally incomplete. Even if that interpretation were correct, the NYPD does not stop training its members of service upon graduation from the academy. Id. at ¶¶ 53-54 and 56-57. As noted, supra, the training provided to recruits is just a starting off point that touches on an extensive array of topics, of which Brady is just one. Id. The design was for recruits to receive this introductory training and then have it expanded upon as their careers progressed via in-service training of the exact type Director Flaherty provided. Id. This is precisely why defendants argued that plaintiff only painted a small aspect of the relevant picture as to the NYPD's training – he completely ignored first person testimony about in-service training that was designed to expand on what was provided in the academy. In sum, plaintiff cannot refute that members of service received training prior to 2015 in the manner described by Director Flaherty nor does he establish any specific deficiency in said training. For that reason, his claim fails as a matter of law.

Even if plaintiff were able to create an issue of fact over whether the NYPD's training program was deficient, he fails to establish how that purported deficiency caused any constitutional violation. As this Court is aware, plaintiff originally claimed that DANY had an unlawful policy, practice or custom for prosecutors not to ask police witnesses about the existence of unrelated civil lawsuits. That claim was withdrawn after discovery was completed. As noted supra, discovery revealed that DANY's policy was to independently search for every civil lawsuit filed against a police officer scheduled to testify at a criminal trial. Id. at ¶¶ 26-35. This search would occur regardless of any conversation the assigned ADA might have with a particular officer. Id. Accordingly, plaintiff has no evidentiary basis to conclude that the failure to disclose civil lawsuit information to his criminal defense attorney was the result of information withheld by the individual defendants rather than simply a situation where DANY's

8

constitutional approach to the issue did not uncover every relevant civil lawsuit. For this reason as well, plaintiff's claim against the City fails as a matter of law.

### POINT V

### AT A MINIMUM THE COURT SHOULD BIFURCATE THE MONELL CLAIM FOR PURPOSES OF TRIAL

Defendants rest on the arguments set forth in their original moving papers.

### POINT VI
### PLAINTIFF FAILS TO ADEQUATELY ALLEGE THE PERSONAL INVOLVEMENT OF DEFENDANT DELTORO

Other than plaintiff's reference to Detective Deltoro potentially being "nearby" when he was searched (as discussed more fully in **POINT I**, supra), he cannot point to any admissible evidence to establish personal involvement. The rest of plaintiff's argument on this point is made up of conspiracy theories without basis and reference to the "blue wall of silence." Plaintiff goes so far as to argue that Detective Deltoro may have known the other defendants were framing plaintiff by virtue of the fact that they had been sued in unrelated civil lawsuits. In addition to being absurd on its face, there is no evidence in the record to establish that Detective Deltoro had any knowledge of the other defendants' civil lawsuit histories. Any claim against Detective Deltoro fails as a matter of law and he should be dismissed from this case with prejudice.

9

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion, together with such costs, fees and other further relief as the Court deems just and proper.

Dated: New York, New York
October 4, 2021

**GEORGIA M. PESTANA**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-3527

By: /s/
_____
Brian Francolla
*Senior Counsel*
Special Federal Litigation Division

cc: Joel Barry Rudin, Esq. (by ECF)
Law Offices of Joel B. Rudin
200 West 57th Street, Suite 900
New York, New York 10019