UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────x

JAWAUN FRASER,

      Plaintiff,

  -against-                                              20 civ. 4926 (CM)

CITY OF NEW YORK, UNDERCOVER OFFICER
NUMBER 84, MATTHEW REGINA, AND JASON
DELTORO,

      Defendants.

───────────────────────────────────x

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

McMahon, J.:

Having had a motion for judgment on the pleadings denied emphatically, the City of New York and three police officers – Detective Jason Deltoro, Detective Matthew Regina, and Undercover Officer No. 84 ("UC 84") (together, "Defendants") have moved after discovery for partial summary judgment dismissing certain of Plaintiff Jawaun Fraser's claims.

The reader is referred to the court's decision denying the motion for judgment on the pleadings (Docket No. 45) for a brief recitation of the facts. There is no need to recite them here. Nor is there any need for the court to repeat the extensive discussion in that decision of the settled point of law that holds police officers who withhold exculpatory of impeaching evidence from prosecutors liable to a criminal defendant for violating the disclosure requirements of *Brady v. Maryland*, 373 U.S. 83 (1963). It is undisputed that Fraser, a defendant in a criminal case in the New York State Supreme Court, was not made aware of certain potential impeachment evidence

1

against the three defendant officers – evidence in the form of lawsuits brought against them for making up evidence, which is what Fraser argued was done in his case. Indeed, there is a decision of the New York State Supreme Court so holding – that is why his conviction was thrown out. *See People v. Frazer,* Decision and Order, Ind. No. 4844/14 (Supreme Court, N.Y. County, December 6, 2019).

Defendants argue that no evidence in the record establishes that the officers failed to disclose the existence of civil suits of which they were aware, and that Fraser's defense counsel should have been able to locate evidence about those lawsuits in the public record. For the reasons set forth in Plaintiff's responsive memorandum of law (Docket No. 79 at pages 5-9), as well as the discussion beginning at page 10 of this court's decision denying the motion for judgment on the pleadings (Docket No. 45) – see especially *United States v. Payne*, 63 F. 3d 1200, 1209 (2d Cir. 1995) – I reject those arguments and agree that genuine issues of fact preclude summary judgment on both points. I also agree that long-settled law, which is discussed in this court's earlier opinion, eliminates any possibility of placing the blame for the failure to locate the lawsuits on the head of defense counsel. Disputed issues of fact also exist about whether Detective Deltoro knew that his fellow officers had made up a false story to justify Fraser's arrest but failed to correct their lies and instead knowingly filed paperwork labeling a copy of UC 84's driver's license as "arrest evidence." In short, this is a case that cries out for resolution by a jury if it cannot be settled prior to trial, because there are genuine issues of material fact relating to every count.

The only issue that might require extended discussion is whether the law requires that the individual defendants' failure to disclose *Brady* material was intentional or merely reckless. But since genuine issues of fact preclude judgment in favor of UC 84 and Deltoro on the issue of intent – both were served with process in at least four of the five undisclosed lawsuits against them –

there is no need to resolve that question of law now, and it may never need to be resolved. If in fact the officers were aware of the lawsuits – and a jury could find that an officer who was personally served with a summons and complaint was aware of a lawsuit – then that jury could conclude that non-disclosure of a known lawsuit was intentional. This ends any possibility of disposing of the issue of intent on summary judgment. I intend to submit both the question of intent and the alternate question of recklessness to the jury at trial, and to take special verdicts thereon. If the jury concludes that the officers behaved intentionally, there will be no need to address this issue of law; and if it concludes that the officers acted only recklessly, then the court will resolve the issue after trial, as should be done.

The City also seeks qualified immunity for the officers, arguing that their failure to disclose potential impeachment material in the form of lawsuits against them did not violate clearly established law. For the reasons articulated in the Plaintiff's opposition memorandum (Docket No. 79 at page 11), I conclude that it was clearly established that officers were required to turn over *Brady* evidence from prosecutors, and that an officer's civil lawsuit history qualified as *Brady* information if (as Justice Stolz concluded) it could be used to impeach the officer sued. The Second Circuit so held quite recently, in *Horn v. Stephenson*, -- F. 4th --, 2021 WL 3776318, at *5 (2d Cir. Aug. 26, 2021).

As long as there remain questions of fact about whether the officers withheld from prosecutors information about lawsuits of which they knew – and I have already held that there are such questions of fact that a jury must resolve – the claims against the officers cannot be dismissed on qualified immunity grounds. In particular, the case cannot be dismissed on the ground that there is no precedent involving "fundamentally similar facts." *Id*. As the Second Circuit has held, there is a balance between defining a right with enough specificity so that officers can fairly

be said to be on notice that their conduct was forbidden, but with a sufficient measure of abstraction to avoid a situation in which rights are deemed "clearly established" only if the exact same fact pattern has "already been condemned." *Simon v. City of New York*, 893 F. 3d 83, 96-97 (2d Cir. 2018).

I also agree with Plaintiff's argument for why the City of New York could be held liable under *Monell* on a failure to train theory.[1] The only training materials that existed prior to Fraser's trial that were produced from the Police Academy mis-defined what constituted *Brady* material, failed to mention impeachment evidence or the impact of *Giglio v. United States,* 405 U.S. 150 1972) on the *Brady* doctrine, and failed to mention that civil lawsuits could constitute impeachment evidence. The officers involved in this case can recall no training on their duty to disclose such information prior to 2017. A reasonable jury could indeed conclude that the City violated its duty to train its officers – and could hold the City liable for that failure even in the absence of individual liability findings against the three officers.

The motion to bifurcate the trial is denied. There is absolutely no basis to bifurcate, especially since the officers can be expected to rely on an alleged lack of training as part of their defense. There will, therefore, necessarily be testimony about the City's training practices during the court of a trial against the officers. This court does not need to sit through the same evidence twice.

This case is being placed in the queue for assignment of a trial date on the court's trial calendar. If the parties are interested in going to the Magistrate Judge for possible settlement, they should contact my chambers.

---

[1] Whether training materials that contain an inaccurate and incomplete description of the *Brady* doctrine qualify as an "unlawful policy" is a question I do not need to answer now; they clearly constitute deficient training materials.

     This constitutes a written decision and order of the court. The Clerk of the Court is directed to remove the motion at Docket No. 67 from the court's list of open motions.

Dated: July 14, 2022

                                                                                              _____
                                                                                                    U.S.D.J.

BY ECF TO ALL COUNSEL