UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————x

JAWAUN FRASER,

       Plaintiff,

  -against-                        20 Civ. 4926 (CM)(OTW)

THE CITY OF NEW YORK, et al.,

       Defendants.

————————————————————————————x

*USDC SDNY*
*DOCUMENT*
*ELECTRONICALLY FILED*
*DOC #:_____*
*DATE FILED: 1/10/23*

## DECISION ON MOTIONS *IN LIMINE*

McMahon, J.:

    The court, for its decision on the motions *in limine*:

## BACKGROUND

    This is an action brought under 42 U.S.C. § 1983 against three police officers – Detective Jason Deltoro, Detective Matthew Regina, and Undercover Officer No. 84 ("UC 84") (together the "Individual Defendants") – for a violation of Plaintiff Jawaun Fraser's *Brady* rights that resulted in a two year incarceration before his conviction was overturned by the New York State Supreme Court. *See Brady v. Maryland*, 373 U.S. 83 (1963). The City is a defendant on alleged *Monell* violations. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978). Motions for judgment on the pleadings and for partial summary judgment have been denied. (Dkt. No. 45, Dkt. No. 87).

    Fraser was arrested on the evening of October 21, 2014 following an interaction with UC 84 on the Lower East Side of Manhattan.

    Fraser alleges that – in order to justify his arrest – UC 84, Regina, and Deltoro created

an entirely false story about how Fraser had robbed UC 84 of his I.D. and $20 in cash. (Complaint ("Compl.") at ¶ 34). Fraser also contended that all three Defendants created false documents to support the story, while Regina and UC 84 testified falsely to the grand jury to support an indictment. (*Id.* at ¶¶ 35, 37, 48). As a result, he was indicted for second-degree robbery on October 29, 2014, in violation of N.Y. Penal Law 160.10(1) (*Id.* at ¶ 47), and went to trial, at which all three defendant officers testified. After being given an *Allen* charge, the jury convicted Fraser on November 24, 2015 – not of robbery in the second degree, the charged offense, but of the lesser-included offense of robbery in the third degree, in violation of N.Y. Penal Law 160.05. (*Id.* at ¶ 70). On January 13, 2016, Fraser was sentenced to a term of two to six years in prison. He served approximately two years in custody before being released on parole. (*Id.* at ¶¶ 74–75).

Prior to trial, Fraser's defense counsel made a general request to the People for *Brady* material. As part of the disclosures, Assistant District Attorney ("ADA") Gregory Sangermano provided Fraser with the names of two federal civil rights lawsuits that had been filed against some of the testifying officers: *Penn v. City of New York*, 10-cv-4907 (RJS); and *Baynes v. City of New York*, 12-cv-5903 (RJS). UC 84 was a defendant in the *Penn* case, and both UC 84 and Regina were defendants in the *Baynes* case. (Compl. at ¶¶ 56–57). As in Fraser's case, the plaintiffs in both lawsuits claimed that the defendant officers had fabricated stories to support otherwise unlawful arrests and prosecutions. Both cases were settled shortly after they were filed.[1]

In May 2019, Fraser's appellate counsel moved under New York Criminal Procedure

---

[1]        This was not a fact that Fraser alleged in his complaint, but a court may take judicial notice of complaints filed in other public lawsuits in deciding a motion to dismiss. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

Law § 440.10 to vacate Fraser's conviction, on the ground that the prosecution had failed to disclose *Brady* material to Fraser's defense counsel. The appeal claimed that the prosecution had disclosed just two of what were actually no fewer than 35 lawsuits that had been filed against various members of the narcotics team that had arrested Fraser. (Compl. at ¶ 80). Of those 35 suits, ten named UC 84 as a defendant; sixteen named Regina as a defendant; and three named Deltoro as a defendant. (*Id.* at ¶¶ 81–83). Most of these lawsuits alleged what Fraser had claimed as his defense at trial – that the officers deliberately lied and fabricated stories to support their otherwise unlawful arrests of innocent civilians.

In response to the § 440 motion, ADA Sangermano acknowledged that, prior to trial, a search conducted by the Manhattan District Attorney's Office had found thirteen lawsuits against the officers involved in Fraser's arrest. (Compl. at ¶¶ 84–85). Sangermano claimed that he had disclosed all  thirteen lawsuits to Fraser's defense; Fraser denied that was the case. However, the DA's Office conceded that it had "constructive knowledge" of at least an additional twelve lawsuits that had been filed against Regina, which it did not disclose. One of these twelve lawsuits also named UC 84 as a defendant. These lawsuits raised claims based on allegedly false arrests, malicious prosecutions, uses of excessive force, and illegal strip searches. *See People v. Fraser*, Ind. No. 4844/14 at 3 (Sup. Ct. N.Y. Cnty. Dec. 6, 2019).

On December 6, 2019, Justice Robert M. Stoltz of the New York County Supreme Court granted Fraser's motion and vacated his conviction for robbery in the third degree, holding that the State violated *Brady* by failing to disclose the twelve lawsuits of which it had constructive

knowledge.[2] Justice Stoltz held that "the suppressed lawsuits were material and that defendant was prejudiced by his inability to cross-examine the officers about instances of misconduct." *Ibid*. The People did not retry Fraser, who entered into a plea agreement where he pled guilty to disorderly conduct – a violation, not a criminal offense. *See* N.Y. Penal Law § 240.20.

Fraser commenced this lawsuit on June 26, 2020. He alleged five causes of action: claims under § 1983 against the Individual Defendants, for (1) denial of liberty and due process (Count I); (2) malicious prosecution (Count II); and (3) denial of a fair trial due owing to the *Brady* violation (Count III); and *Monell* claims against the City for (4) the New York Police Department's involvement in the *Brady* violation (Count IV); and (5) the Manhattan DA's involvement in the *Brady* violation (Count V).

All pre-trial motions, whether for judgment on the pleadings or for summary judgment, have been denied.

## DISCUSSION

I.      **Plaintiff's Motions *in limine*:**

*A.      Motion No. 1:*

Plaintiff moves *in limine* that the jury be given an adverse inference charge due to the failure of Defendant Deltoro to produce his memo book (described as "highly relevant evidence") for the period covered by the events in suit. (Dkt. No. 110). For substantially the reasons outlined in Defendants' responsive memo, the motion is denied.

---

[2]      Justice Stoltz's opinion begins by mentioning that Fraser claimed he discovered "at least 35 civil lawsuits alleging misconduct by UC/84, Regina, and other members of the field team." *People v. Fraser*, Ind. No. 4844/14 at 3 (Sup. Ct. N.Y. Cnty. Dec. 6, 2019). However, Justice Stoltz only discussed 25 lawsuits: the 13 lawsuits that the State claims to have disclosed and that Fraser denies were disclosed, and the 12 admittedly undisclosed lawsuits of which the Manhattan DA had constructive knowledge. This discrepancy in the number of lawsuits was not explained in Justice Stoltz's opinion. In the complaint in this action, Fraser alleged that the Manhattan DA had constructive knowledge of 22 (not just 12) lawsuits. (Compl. at ¶¶ 86–87); he also alleged that he had learned of a total of 38 such lawsuits (not 35). (Compl. at ¶ 111).

Plaintiff points to absolutely no evidence suggesting that the missing memo book contains any information that would be relevant to the claims in suit (the withholding of *Brady* material concerning lawsuits against the Defendants). As a result, any adverse inference would be based on pure speculation about what the memo book might or might not say. Given this court's rather extensive experience reviewing the contents of memo books, in both this court and the New York State Supreme Court, any such speculation would almost certainly be groundless. The notion that a police officer's memo book – which ordinarily documents the time of response to police calls and the fact of arrests and precious little else – might contain information about either (1) Deltoro's knowledge that his fellow officers had made up a false story about Plaintiff's arrest, or (2) a subsequent decision not to disclose information about lawsuits against him or the other Defendants is, frankly, ludicrous. I am entirely persuaded by my colleague Judge Matsumoto's decision in *Stephen v. Hanley*, 2009 U.S. Dist LEXIS 42779 (E.D.N.Y. May 20, 2009) that in the absence of any evidence that the memo book did or even might have contained information of that nature, there is no warrant for asking the jury to draw any adverse inference that would support the specific claims against Deltoro that are asserted in this case.

B.    *Motion No. 2:*

Plaintiff moves *in limine* for an order precluding the Defendants from "blaming third parties for the Defendants' own *Brady* violations." (Dkt. No. 113). The motion is granted in part and denied in part.

The motion is granted insofar as Defendants might have been planning to argue that defense counsel's failure to learn about the lawsuits as part of his trial preparation – because they were part of the public record – excuses any failure by Defendants not to disclose lawsuits against them to the District Attorney. As this court ruled when denying the motion for judgment on the

pleadings, (1) police officers have a duty under *Brady v. Maryland*; and (2) they satisfy that duty when they disclose information that could be exculpatory (including exculpatory because it would be useful on cross examination) to the prosecutor, who is then responsible for turning that information over to the defense. (*See* Dkt. No. 45 at 13-17). For purposes of a § 1983 lawsuit against the police, whether defense counsel did or did not live up to his duty to provide competent representation is irrelevant; the officers had their own independent duty and the issue for the jury is whether or not they fulfilled it. The United States Supreme Court has held that the defendant in a criminal case is entitled to rely on the completeness and accuracy of the prosecutor's *Brady* disclosures and has no duty to "scavenge for hints of undisclosed *Brady* material." *Banks v. Dretke*, 540 U.S. 668, 695 (2004); *United States v. Payne,* 63 F.3d 1200, 1209 (2d Cir. 1995).

Defendants argue that disallowing evidence and argument about defense counsel's "malpractice" in failing to discover the publicly available information about the lawsuits would "significantly hamper any defense to plaintiff's *Brady* claim." (Dkt. No. 130 at 1). If that is what Defendants were planning to argue, I am sure that their defense will be hampered. But if a criminal defendant is entitled to rely on the completeness and accuracy of the prosecutor's *Brady* disclosures – and who am I to gainsay the United States Supreme Court? – then defense counsel's failure to ferret them out of the public record provides no defense to the Individual Defendants' failure to disclose those lawsuits. The issue is whether the officers complied with their constitutional obligation, not whether they were or were not the sole "gatekeepers" of this

information.[3]

Defendants also assert that defense counsel's failure to learn about this potential cross examination material on their own, without being told by the prosecution, could be used to mitigate Plaintiff's damages. It is not clear whether Defendants plan to make such an argument. At page 5 of their brief in opposition, Defendants state that they interpreted this court's decision on the motion for judgment on the pleadings are foreclosing any argument that, even if they did violate their *Brady* obligations, any resulting harm is the fault of defense counsel – and then go on to say, "Defendants had no intention of making any such argument." But in the very next sentence, they might seem to walk back the cat, by saying that they want to argue "Whether Fraser actually knew or should have known about the lawsuits filed against the officers." (*Id.*)

Whether Fraser (or his counsel) had actual knowledge of the undisclosed lawsuits is indeed relevant to damages. Even if there were non-disclosure by the Individual Defendants, if Fraser actually had the information at the time of trial, and so was in a position to use it to cross examine the officers while they were on the stand, then we are looking at no more than nominal damages for any constitutional violation that may be proven – no harm, no foul. But once we cross into "should have known" territory, the City's position crumbles. Defendants cannot argue that Fraser and his attorney "should have known" about the lawsuits simply because they were a matter of public record. They can argue only about what was actually known.

---

[3]   While the Second Circuit has held that "Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence," (*DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir.2006); *see also Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir.2001)), the Circuit Court has emphasized that this requirement "speaks to facts already within the defendant's purview, not those that might be unearthed. It imposes no duty upon a defendant, who was reasonably unaware of exculpatory information, to take affirmative steps to seek out and uncover such information in the possession of the prosecution in order to prevail under *Brady*." *Lewis v. Connecticut Com'r of Correction*, 790 F.3d 109, 121 (2d Cir. 2015); *see also United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (finding that the government's suppression of an affidavit was a *Brady* violation – despite the document's availability in a public court file – as defense counsel was not aware of facts that would have required him to discover the affidavit through his own diligent investigation.)

All this, of course, presumes that the Individual Defendants were themselves aware of the lawsuits. The officers were not required to ferret through the public record either; their *Brady* obligations were satisfied when they disclosed anything of which they were aware to the ADA, the person who had the obligation to check the public record if anyone did. The ADA has testified that, in his experience, police officers are frequently unaware of every lawsuit in which they have been named as a defendant. As this court has said repeatedly, Plaintiff has to prove that the Individual Defendants "suppressed" evidence about the various lawsuits against them – which, to take one example, makes the fact that a defendant was never served with process, or that the case was abandoned by Plaintiff, relevant evidence in the civil *Brady* context. We have not yet finally resolved whether the court will charge the jury that, in this civil § 1983 case (as opposed to a criminal case, where *Brady* liability on the People is strict), liability can only be imposed for intentional non-disclosure (which might also have an impact on the question of whether the word "know" includes both actual knowledge and "should have known" knowledge). The parties will have one more opportunity to brief this issue, which to my great surprise is not the subject of a motion *in limine*.

C.      *Motion No. 3:*

In his third motion *in limine*, Plaintiff seeks an order permitting testimony concerning certain allegedly relevant prior bad acts of Defendant Deltoro and former Lt. John Patane, who is not a defendant but who is listed as a witness. (Dkt. No. 115).

As to Patane the motion is denied. Plaintiff wishes to ask Patane about Internal Affairs Bureau ("IAB") allegations concerning his failure to notify the IAB about missing narcotics and his failure to maintain accurate and complete memo books. In September 2014, Patane was involved in an incident in which narcotics recovered in a buy and bust were accidentally returned

to the defendant when she was released on a desk appearance ticket. Instead of immediately informing a supervisor, Patane and another detective went to the defendant's home and retrieved one of the two bags of drugs (the rest had already been consumed). Even then he did not report the incident, on the theory that the drugs were "no longer missing." For this, and for failing to log the information in his memo book and properly voucher the evidence, he was disciplined. Plaintiff alleges that this deception is indicative of Patane's character for truthfulness.

It is not clear to the court exactly what evidence Patane has that needs to be admitted at this trial. Patane is not a defendant; he is not accused of violating *Brady* or making up evidence; he did not observe the interaction between Plaintiff and UC 84. His only knowledge about the incident came from Defendant Regina, which is undoubtedly why he did not testify during Plaintiff's criminal prosecution.

At the final pre-trial conference we will discuss whether Patane has any evidence that would be useful at the trial. But I cannot see that any of the evidence Plaintiff wishes to introduce goes to Lt. Patane's character for truthfulness; moreover, it is likely to lead to a frolic and detour unnecessary to the resolution of this case, especially as Patane is at best a peripheral witness. Therefore, the motion is denied as to him.

Defendant Deltoro was disciplined in 2012 for making what was deemed an incomplete or improper entry in his memo book, and again in 2019 for losing his memo book. He also cannot find the memo book in which he recorded anything about his activity with respect to the events in suit. Plaintiff wishes to cross examine him about the prior instances.

This motion too is denied. The 2012 and 2019 incidents are not probative of his character for truthfulness, no matter what Plaintiff argues. There is nothing in the record to indicate that Deltoro was disciplined back in 2012 for lying or falsifying an entry in his memo book (which

would be probative on the issue of truthfulness). The fact that someone loses a memo book (the 2019 incident) is not probative on the question of truthfulness either; again, there is no evidence that he ever lied about losing the memo book, or suggesting that it was "lost" because it had been falsified.

So as far as I am concerned the only issue is whether the fact that Deltoro was admonished for losing memo books should be admitted pursuant to Fed. R. Ev. 404(b). That motion is denied. Neither incident is being offered for the purpose of showing "motive, opportunity, intent, preparation, plan knowledge, identity, absence of mistake or lack of accident." The only justification for offering information about these two (very different) incidents is to show that there was something nefarious about the fact that the officer has lost his memo book for the period covered by this incident. I have already ruled that the jury may not draw any adverse inference about the contents of the memo book from its loss, or presume that it would contain information helpful to Plaintiff. And I am not going to permit the trial to turn into a frolic and detour about the actual contents of police officer memo books – which, in this court's rather extensive experience, say little or nothing of substance that would advance Plaintiff's particular case. The probative value of these two incidents is not negligible – it is non-existent – and so is outweighed by the possible prejudice of the jury's drawing unwarranted conclusions from the fact that they were admitted. The motion is denied.

## II.     Defendants' Motions *in limine*

### A.     *Motion No.1:*

Defendants move *in limine* to admit "limited aspects of plaintiff's criminal and potentially prior bad acts." (Dkt. No. 98). I need not waste a lot of time on this motion. For the reasons outlined in Plaintiff's opposing brief – with which this court fully agrees – the motions (there are

actually two of them, one relating to two prior instances of brief incarceration and one relating to an alleged admission about a prior sale of narcotics, which was not the crime charged in this case) are denied.

   B.   *Motion No. 2:*

Defendants move *in limine* to preclude a variety of documentary evidence from "unrelated civil lawsuits," as well as to preclude the introduction of the decision of Justice Stoltz vacating Plaintiff's conviction. (Dkt. No. 101) Again, the City has sneaked in several motions under the cover of a single notice of motion.

The parties agree that Plaintiff can introduce evidence about eight lawsuits. As of now I do not know what the eight lawsuits are. Someone should tell me what they are. The City wants to preclude Plaintiff from introducing evidence about more than eight lawsuits, which lawsuits the Defendants concede are the lawsuits that should have been disclosed. At the trial in this court, the following rules apply:

No information may be disclosed about lawsuits filed against either Lt. Patane or Officer Lee, because they are not defendants in this case. The basis for the alleged *Brady* violation is that information was not disclosed that could have been used for cross examination. Persons who are not called as witnesses are not available for cross examination so there was no *Brady* violation for failing to disclose the lawsuit. The fact that a person was listed as a possible witness on a witness list did not trigger the obligation to turn over impeachment information unless and until a decision was made to call that person as a witness. I disagree that this information is relevant to Plaintiff's *Monell* claim, since there was no *Brady* violation. Unfortunately, the *in limine* motion does not list what these lawsuits are. Please provide the court with the names and Index Numbers of these lawsuits so that I can make a comprehensible ruling.

No information may be disclosed about any lawsuit that was filed after the date of the Plaintiff's conviction. It is not possible to "suppress" something that does not exist. Please provide the court with the names and Index numbers of these lawsuits, as well as a docket sheet or other document that shows the date of filing. I need this information in order to make a comprehensible ruling

Now we get to lawsuits in which the three Individual Defendants were parties. In order for the court to decide whether information about those lawsuits is admissible in this lawsuit, I need to decide, as a matter of law, whether the failure to disclose each such lawsuit constituted a *Brady* violation. That is NOT an issue for the jury to decide; it is a question of law for the court.

The City is correct about one thing: the mere fact that a Defendant was named in a lawsuit, without more, does not make the lawsuit fair game for impeachment, since people are sued all the time without any basis whatsoever. The mere fact that a lawsuit was commenced has "little to no probative value" with respect to an officer witness' credibility. *People v. Smith*, 27 N.Y. 3d 652, 662, n.1 (2016). The law in New York, which was settled in *People v. Smith*, is to the effect that prosecution witnesses – and indeed, even a testifying defendant – may be cross-examined on "prior specific criminal, vicious or immoral conduct," provided that "the nature of such conduct or the circumstances in which it occurred bear logically and reasonably on the issue of credibility." *People v. Sandoval*, 34 N.Y.2d 371, 376, (1974). It is the nature of the alleged wrongdoing, not the fact of a lawsuit, that can be used to undermine a witness' credibility. Therefore, the rule is as follows:

> Where a lawsuit has not resulted in an adverse finding against a police officer, as is the case with these three appeals, defendants should not be permitted to ask a witness if he or she has been sued, if the case was settled (unless there was an admission of wrongdoing) or if the criminal charges related to the plaintiffs in those actions were dismissed. However, subject to the trial court's discretion, defendants should be permitted to ask

questions based on the specific allegations of the lawsuit if the allegations are relevant to the credibility of the witness.

*People v. Smith*, 27 N.Y. 3d at 662.

Since this court is not simply going to presume that the failure to disclose each and every one of the 38 lawsuits resulted in a *Brady* violation, it is Plaintiff's burden to demonstrate to the court that the non-disclosure resulted in a *Brady* violation. Plaintiff's counsel has not made a motion *in limine* listing the lawsuits he wishes to introduce; pointed to the specific allegations therein that would have been usable on cross examination at Plaintiff's trial against a specific Defendant in this case;[4] or provided any information about the disposition of the lawsuits. Without all of that information I cannot decide, on a lawsuit by lawsuit basis, what is fair game for a complaint that alleges a *Brady* violation and what is not. And while it is not Defendants' burden to establish what should not be admitted into evidence, the fact is that Defendants' papers in support of their "reverse" *in limine* motion are woefully deficient; attaching a copy of the responsive brief on the § 440 motion is not sufficient to allow me to decide that a particular lawsuit is not fair game (though Defendants' failure on such a motion would not necessarily make the lawsuit admissible as proof of a *Brady* violation).

But I take the case as I find it. A state court judge has found that the City failed to disclose 12 lawsuits of which it had constructive knowledge in violation of *Brady*. That ruling has not been reversed. Therefore, Plaintiff may introduce evidence about those 12 lawsuits at the upcoming federal trial. Since Plaintiff has not made any showing *in limine* that the non-disclosure of any other lawsuit violates *Brady* and since the time for making *in limine* motions has passed, I will not allow information about any other lawsuit to be introduced into evidence. The parties

---

[4]      That information might be found in, say, deposition transcripts or responses to interrogatories as well; in this civil action it is the job of Plaintiff's counsel to establish that the failure to disclose any particular lawsuit that is not one of the 12 that were the basis for Justice Stoltz's opinion violated *Brady*.

must provide the court with a list of those 12 lawsuits, including which of the three Individual Defendants in this action were sued in those lawsuits; a summary of the allegations about the conduct of the sued Defendant(s); and a disposition summary, including specifically any findings or admissions of wrongdoing.

Defendants also move *in limine* to preclude cross examination of the Individual Defendants about prior lawsuits as "prior bad acts" pursuant to Fed. R. Ev. 404(b). It is Plaintiff's burden to move prior to trial if Plaintiff wishes to introduce evidence of prior bad acts under Rule 404(b); to identify with specificity each and every prior bad act it wishes to introduce; and to explain why the evidence is more probative that any prejudice it might cause. Plaintiff has not bothered to do that. There is, therefore, nothing on which the court can rule. Defendants' motion is made in a vacuum in the absence of specific and detailed information from Plaintiff about each and every prior bad act it proposes to question the Defendants about. I will not allow any such questioning until a pre-trial ruling has been made.

As for the text of Justice Stolz's decision, it may come into evidence.

C.     *Motion No. 3:*

Defendants move *in limine* for adequate safeguards to protect the identity of Defendant known as UC 84, who is still working under cover. (Dkt. No. 104). The motion is granted to the following extent: the court will arrange for Plaintiff's family, the press, and members of the public who are interested to listen to the audio of UC 84's testimony in another courtroom, and to be shown copies of the exhibits that are used during his testimony. While I appreciate that Judge Engelmayer, in another case, allowed Plaintiff's family and one member of the courthouse press to remain in the courtroom while an undercover officer testified, I agree with my colleague Judge Wood and others who have authorized full closure of the courtroom during the testimony of an

active undercover police officer in a civil case. The only cases of which this court is aware that compel the presence of a defendant's family in the courtroom arise in connection with criminal trials, and specifically the Sixth Amendment right to a "public" trial." *See Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir.1994); *Carson v. Fischer*, 421 F.3d 83, 91 (2d Cir. 2005). And while I am fully cognizant of the presumption against closing any public courtroom, given the exigencies of UC 84's situation and the danger presented by his exposure – as well as the fact that the court can take steps to ensure that anyone who wants to (including Plaintiff's family and the press) can hear every word that UC 84 says, I will work out an appropriate instruction for the jury when we are on the eve of trial. This solution satisfies the requirement that in court proceedings be open to the public and the press while balancing the safety issues to the defendant/witness. *Ayala v. Speckard*, 131 F.3d 62, 68 (2d Cir. 1997).

D.      *Motion No. 4:*

Defendants move *in limine* to preclude evidence that the Individual Defendants may be indemnified by the City of New York. (Dkt. No. 106) The motion is granted.

E.      *Motion No. 5:*

Defendants move *in limine* to preclude Plaintiff's counsel from suggesting a dollar amount of damages to the jury. (Dkt. No. 108). The motion is denied. However, in its jury instructions, the court will remind the jury that counsel is not a witness; that his statements are not evidence; and that any damages they award must be based on a fair assessment of the evidence, and not ground in speculation or based simply on the arguments of counsel.

## FINAL PRE-TRIAL CONFERENCE

The final pre-trial conference in this matter is scheduled for, and will take place on, Thursday, January 19 at 3:00 pm. None of the trial dates proposed by counsel is available on the

court's calendar. Since the parties do not want to go to trial on the assigned date of January 24, they will have to go to trial on March 6 (and plaintiff's counsel will have to change his March 13 date if the trial is going to last longer than five days). That is the only date the court has free in the next six months and my schedule controls; I am not prepared to postpone this case any longer. If that means you need to find someone else in your office to try the case, then find someone else to try the case. This date is NOT going to change; if Plaintiff fails to show up the case will be dismissed and if Defendants fail to show up, they will be defaulted.

Dated: January 10, 2023

_____
U.S.D.J.

BY ECF TO ALL COUNSEL