UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAWAUN FRASER,

                Plaintiff,

      -against-

THE CITY OF NEW YORK, UNDERCOVER OFFICER NUMBER 84, DETECTIVE MATTHEW REGINA, and DETECTIVE JASON DELTORO, Individually and as Members of the New York City Police Department,

                Defendants.

20-cv-4926 (CM)(OTW)

## PLAINTIFF'S MEMORANDUM OF LAW REGARDING INTENT REQUIREMENT FOR CIVIL *BRADY* CLAIM AGAINST POLICE

LAW OFFICES OF JOEL B. RUDIN, P.C.
Joel B. Rudin
David E. Rudin
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com
david@rudinlaw.com

BLOCH & WHITE LLP
Michael L. Bloch
Benjamin D. White
Cristina Alvarez
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 702-8670
mbloch@blochwhite.com
bwhite@blochwhite.com
calvarez@blochwhite.com

*Attorneys for Plaintiff Jawaun Fraser*

Plaintiff, Jawaun Fraser, respectfully submits this memorandum of law concerning the state of mind required for an individual police *Brady* violation. The Second Circuit has not resolved whether there is any state of mind requirement for a civil *Brady* claim under 42 U.S.C. § 1983. *See Bellamy v. City of New York*, 914 F.3d 727, 751, n.23 (2d Cir. 2019).[1] However, it is beyond dispute that (i) there is no state of mind requirement to establish a violation of the rule laid out in *Brady v. Maryland*, 373 U.S. 83 (1963), and (ii) there is no general state of mind requirement under Section 1983, *see Parratt v. Taylor,* 451 U.S. 527, 534 (1981).[2] It follows that there can be no intent requirement for the *Brady* claims in this case.

In *Parratt*, the Supreme Court held that § 1983 does not have its own intent requirement. Thus, any requirement of a culpable mental state must be based upon the elements of the underlying constitutional violation that is actionable under § 1983. *See Hudson v. New York City*, 271 F. 3d 62, 68 (2d Cir. 2001). And it is axiomatic that *Brady* does not require any showing of intent or bad faith. *See Brady*, 373 U.S. at 87. A *Brady* claim simply requires that evidence have been "suppressed by the State, either willfully or *inadvertently*." *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc) (emphasis added). It follows, under *Parratt,* that there is no further intent requirement for imposing civil liability upon a police officer for withholding *Brady* material.

*Daniels v. Williams*, 474 U.S. 327 (1986), a Supreme Court decision often cited on this issue and on which the Defendants may rely, is not to the contrary. In *Daniels*, a prisoner who

---

[1] In *Fappiano v. City of New York*, 640 Fed. App'x 115, 118 (2d Cir. 2016) (summary order), the Second Circuit observed that it had never found that a less-than-intentional *Brady* violation establishes a § 1983 due process claim for damages, but it did not elaborate. One of the cases it cited, *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992), required deliberate indifference, not intent, for municipal liability. In any event, *Fappiano* is non-precedential.

[2] Indeed, the lack of an intent requirement in 42 U.S.C. § 1983 is precisely what distinguishes it from "its criminal counterpart, 18 U.S.C. § 142." *Daniels v. Williams*, 474 U.S. 327, 330 (1986).

1

slipped on a pillow a prison official had negligently left on a stairway brought a due process claim for deprivation of liberty from bodily injury. The Supreme Court, affirming the grant of summary judgment against the plaintiff, reaffirmed *Parratt*'s holding that § 1983 does not have its own *mens rea* requirement and that one need look to the *mens rea* required for the underlying constitutional right. *Id.* at 330-31. In *Daniels*, that right was the Due Process Clause, and the Court "conclude[d] that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328.

That language has no bearing on this *Brady* case. *Daniels* was not a *Brady* case and to construe it as concluding that negligence can never support *any* Due Process violation (including a *Brady* claim) would be directly contrary to the black-letter law that *Brady* has no *mens rea* requirement. *See supra* at 1. Indeed, in the ensuing 37 years since *Daniels*, the Supreme Court has never altered its rule that a constitutional violation under *Brady* occurs regardless of the actor's mental state. *See Strickler v. Greene*, 527 U.S. 263, 281 (1999) (reinforcing that a *Brady* violation occurs when evidence is suppressed "either willfully or inadvertently"). As recently as 2021, in relation to a civil lawsuit under § 1983, the Second Circuit applied to police forensic examiners *Brady*'s obligation, "irrespective of [] good faith or bad faith," to provide prosecutors with "any *Brady* evidence that is favorable to the accused" so that such prosecutors may make disclosure decisions. *Horn v. Stephenson*, 11 F.4th 163, 170-71 (2d Cir. 2021). To construe *Daniels* to have grafted a *mens rea* requirement onto *Brady* claims would drastically upend our understanding of the *Brady* obligation in criminal trials.

Admittedly, there is some tension in the broad language of *Daniels* and the deeply-rooted principle that a *Brady* violation has no intent requirement. But *Daniels* itself helps resolve that tension by acknowledging that there are some "constitutional provisions that *would* be violated

by mere lack of care." *Id.* at 334 (emphasis added). The determining factor is whether the constitutional protection relates to conduct that is truly "governmental in nature," *i.e.*, "abuse[s] of power," or rather the simple "lack of due care" that was at issue in *Daniels* (a prison guard's inadvertent placement of a pillow). The *Daniels* Court was concerned with constitutionalizing the latter, which "would trivialize the centuries-old principle of due process of law." *Id.* at 332. Withholding impeaching evidence in a criminal trial, however, is certainly "governmental in nature" and relates to an "abuse of power"; there is nothing "trivial" about constitutionalizing it.

In any event, the language of *Daniels* can be read to be consistent with *Brady* and its progeny. In a persuasive dissent for an equally divided *en banc* court, Fourth Circuit Judge Murnaghan did so by reasoning that every government actor who withholds evidence necessary to afford due process does so as part of an intentional participation in the prosecution and that no further proof of intent should be required. *See Jean v. Collins*, 221 F.3d 656, 673, 674 n.5 (4th Cir. 2000) (en banc) (Murnaghan, J., dissenting). In other words, intent can, in effect, be presumed and the jury need not find it.

This is not to say that, under the circumstances of this case, the defendants' *knowledge* is irrelevant. *Brady* requires, as a prerequisite for liability, that the state actor have possession, custody or control of the evidence or information favorable to the defense. *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998). That means, in this case, that the defendant officers must have been served with lawsuits bearing upon their credibility or, at the very least, have been aware of their existence. Assuming this requirement is met, then the defendants would be liable. But showing the defendants' *knowledge* is distinct from showing *intent*.

Police officers must disclose all evidence that is favorable to the accused because "the police may lack 'the requisite legal acumen' to determine whether materials constitute *Brady*

3

evidence, and therefore they should not be charged with 'mak[ing] separate, often difficult, and perhaps conflicting, disclosure decisions.'" *Horn,* 11 F.4th at 171 (quoting *Walker v. City of New York,* 974 F.2d 293, 299 (2d Cir. 1992)).  See also *Moldowan v. City of Warren*, 578 F.3d 351, 379-80 (6th Cir. 2009) (quoting *Jean*, 221 F.3d at 664) (police "ministerially deliver" evidence to the prosecutor, who "then makes a discretionary legal judgment" whether to disclose it as *Brady* material). An intent requirement would undermine this obligation and thus criminal defendants' fair trial rights.[3]

Should the Court disagree with the foregoing, it should charge not just intent, but the lesser alternative of recklessness as well.  Numerous courts have agreed that deliberate indifference or reckless disregard for a criminal defendant's rights can sustain a *Brady* claim under § 1983.  *See Tennison v. City and Cty. of S.F.*, 570 F.3d 1078, 1087 (9th Cir. 2009) ("[A] § 1983 plaintiff must show that police officers acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors"); *Steidl v. Fermon*, 494 F.3d 623 (7th Cir. 2007) ("[D]eliberate, reckless indifference" is sufficient for a *Brady* claim against police officers for withholding evidence from prosecutor); *Nnodimele v. Derienzo*, 13-cv-3461, 2016 WL 3561708, at *5 (E.D.N.Y. June 27, 2016) (Ross, J.) (same); *see also Moldowan*, 578 F.3d at 383, 388 (where the exculpatory value of evidence is "apparent," the police have an absolute constitutional duty to disclose that evidence).

Courts that require bad faith before a police officer will be held liable for violating *Brady* assume that only prosecutors, and not police, may be held to *Brady*'s no-fault standard of care.

---

[3] A no-fault standard vindicates individuals' fair trial rights without exposing individual defendants to financial loss because the City is obligated to indemnify officers for "any negligent act or tort." N.Y. Gen. Mun. § 50-j(1).  The rule is not the same for intentional wrongdoing. N.Y. Gen. Mun. § 50-k(3).  Ironically, requiring a jury to find intent would expose officers to potentially ruinous personal financial liability whereas a no-fault standard would not.

4

*See Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 & n.6 (4th Cir. 2014); *Villasana v. Wilhoit*, 368 F.3d 976, 980 (8th Cir. 2004); *see also Porter v. White*, 483 F.3d 1294, 1308 (11th Cir. 2007) (declining to reach question of whether recklessness or gross negligence suffices). But even assuming *arguendo* that *Brady*'s no-fault standard only applies to prosecutors and not the State as a whole, this does not excuse police officers for consciously choosing to keep prosecutors in the dark. Just as surely as an intentional withholding of known favorable information deprives the prosecutor of his ability to determine whether to disclose it to the defense, the conscious disregard of a substantial risk that a lawsuit contains such information equally thwarts the prosecutor's function while unacceptably increasing the likelihood that the defendant's due process rights will be infringed.

While *Owens* further relies on *Arizona v. Youngblood*, 488 U.S. 51 (1988), which requires a showing of bad faith to establish that a loss of evidence violates due process, *Youngblood* was decided that way because the exculpatory value of the lost evidence was unknown, whereas in the *Brady* context, the favorable nature of the withheld evidence is known and can be readily evaluated. *See*, e.g., *Tennison*, 570 F.3d at 1087 (distinguishing *Youngblood*).

Accordingly, this Court, if it charges intent, should also charge recklessness. If the jury finds intent, then it need not consider recklessness. Even though we do not believe that either mental state is an element, they should be offered in the alternative to the jury to eliminate the risk of appeal.

> Judge Sand's treatise explains how each element may be charged:
>
> An act is intentional if it is done voluntarily and deliberately and not because of mistake, accident, negligence, or other innocent reason. Please note that intent can be proved directly or it can be proved by reasonable inference from circumstantial evidence.

5

Sand et al., *Modern Federal Jury Instructions*, 87-76 (2016) (hereinafter *Modern Federal Jury Instructions*).

> An act is reckless if done in conscious disregard of its known probable consequences. In other words, even if a defendant did not intentionally seek to deprive a plaintiff of the plaintiff's rights, if nevertheless he purposely disregarded the high probability that his actions would deprive the plaintiff of the plaintiff's rights, then [this] element would be satisfied.

*Id.*, 87-77.

Respectfully submitted,

/s/ _____
Joel B. Rudin, Esq.
David E. Rudin, Esq.
Carnegie Hall Tower
152 West 57th, 8th Floor
New York, NY 10019
Tel No.: (212) 752-7600
Fax No.: (212) 980-2968
Email: jbrudin@rudinlaw.com

/s/ _____
Michael L. Bloch, Esq.
Benjamin D. White, Esq.
Bloch & White LLP
152 West 57th, 8th Floor
New York, NY 10019
Tel No.: (212) 702-8670
Email: mbloch@blochwhite.com

*Attorneys for Plaintiff Jawaun Fraser*

Dated:  New York, New York
        February 10, 2023